J-A16020-19

2019 PA Super 251

| CHRISTOPHER CONNER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KATHERENE E. HOLTZINGER CONNER | : | No. 856 MDA 2018 |

Appeal from the Order Entered April 24, 2018
In the Court of Common Pleas of Cumberland County Civil Division at
No(s): 15-01899

| CHRISTOPHER CONNER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KATHERENE E. HOLTZINGER CONNER | : | |
| | : | No. 907 MDA 2018 |
| Appellant | : | |

Appeal from the Order Entered April 24, 2018
In the Court of Common Pleas of Cumberland County Civil Division at
No(s): 15-01899

BEFORE: LAZARUS, J., MURRAY, J., and STEVENS*, P.J.E.

OPINION BY MURRAY, J.: **FILED: AUGUST 20, 2019**

Christopher Conner (Husband) appeals, and Katherene E. Holtzinger Conner (Wife) cross-appeals, from the order purporting to resolve the economic claims attendant to the parties' divorce action. Upon review, we reverse in part, affirm in part, and remand for further proceedings.

---

\* Former Justice specially assigned to the Superior Court.

**Factual and Procedural Background**

Husband and Wife were married on July 29, 1984, and have four adult children. They were married for more than 30 years before separating in 2014. They are currently in their early 60s. Both parties have law degrees, although their careers and earnings have diverged.

Husband worked as an attorney in private practice for the first 20 years of his career. The retirement funds from Husband's time in private practice, plus $5,909 in premarital retirement funds, are reflected in Husband's Schwab IRA account.

On July 26, 2002, Husband was appointed United States District Judge for the Middle District of Pennsylvania. On September 1, 2013, Husband was appointed, and currently serves as, Chief Judge of the Middle District of Pennsylvania. In his capacity as a federal judge, Husband, upon satisfying the Rule of 80,[1] is entitled to receive "an annuity equal to the salary he was receiving at the time he retired." 28 U.S.C.A. § 371 (Judicial Income). Moreover, Husband can elect to participate in a judicial survivors' annuity system (JSAS), "a voluntary survivor benefit plan that provides annuities to the survivors of certain Article III judges." Trial Court Opinion, 4/24/18, at 2;

---

[1] The Rule of 80 refers to the age and service requirements for retirement under Section 371. Specifically, a justice or judge is eligible for a salary annuity once the sum of their age and years of service equals 80.

*see also* 28 U.S.C.A. § 376.  Husband contributes 2.2% of his gross income to the JSAS.

Wife began her career working at the Dauphin County District Attorney's Office.  Following the birth of the parties' first child, Wife began working part-time in a private law practice.  Eventually, Wife transitioned to a faculty position at Penn State Dickinson Law School, where she remained a part of the faculty until her contract expired in 2017.  While at Dickinson Law School, Wife held various positions, including Director of Public Interest Programs and Faculty Supervisor for Externship Placement.  At the time of the equitable distribution hearing, Wife was unemployed but receiving a pension through her Pennsylvania State Employee Retirement System (SERS).

On April 2, 2015, Husband filed a complaint in divorce.  On November 10, 2016, Husband filed a petition for bifurcation, seeking to separate the divorce action from ancillary economic claims.  Wife filed an answer to Husband's petition and a separate petition raising economic claims on November 23, 2016.  On January 4, 2017, Wife filed a petition for alimony *pendente lite* (APL).  On February 1, 2017, the trial court entered an order granting Husband's petition for bifurcation and issuing a divorce decree, and awarding Wife $3,900 per month in APL.

The record reveals that on September 25, 2017, after reviewing the parties' briefs — but without conducting an evidentiary hearing — the trial court entered an order finding Husband's Judicial Income and JSAS to be marital property subject to equitable distribution.  **See** Order, 9/25/17.

Husband filed a motion for reconsideration, which the trial court denied on November 16, 2017.

On November 28, 2017, the trial court convened a hearing to address equitable distribution and alimony. On December 22, 2017, the trial court entered an order and opinion, dividing the parties' assets, and awarding Wife $2,500 per month in alimony until Husband "reaches pay status for his Judicial [Income]," at which time "Wife shall immediately begin receiving her share of Husband's retirement. . ." Trial Court Opinion, 12/22/17, at ¶ 3-4. Husband and Wife both filed for reconsideration of the trial court's equitable distribution and alimony order. The trial court granted reconsideration on January 17, 2018. On March 9, 2018, the parties consented to post-trial stipulations, in which they addressed Husband's Schwab IRA, Judicial Income, JSAS, and alimony. On April 24, 2018, the trial court issued a final order and opinion disposing of the parties' equitable distribution and alimony claims.

Husband filed a timely appeal, challenging: (1) the September 25, 2017 order finding Husband's Judicial Income and JSAS to be marital property subject to equitable distribution; (2) the November 16, 2017 order denying reconsideration of the September 25, 2017 order; (3) the December 22, 2017 equitable distribution order; and (4) the April 24, 2018 final equitable distribution order.[2] Husband's Brief at 11.

_____

[2] We remind Husband that an appeal does not lie from an order denying reconsideration; instead, an appeal must be timely filed from the underlying

Wife cross-appealed, challenging the trial court's April 24, 2018 final order of equitable distribution. The trial court, Husband and Wife have all complied with Pennsylvania Rule of Appellate Procedure 1925.

**Issues**

On appeal, Husband raises five issues:

1. Did the trial court abuse its discretion and commit reversible error when it found that marital property included the salary guarantee afforded to [Husband], a United States Federal Judge, pursuant to 28 U.S.C.A. § 371 *et seq.*, upon a transition to senior status or to full retirement?

2. Did the trial court abuse its discretion and commit reversible error when, after having determined that Former Husband's [Judicial Income] benefits should be subject to deferred distribution, abruptly reversed course on reconsideration (without notice to the parties) and engaged in an independent actuarial calculation to determine a present value of said [Judicial Income] in the amount of $3,536,000?

3. Did the trial court abuse its discretion and commit reversible error by attributing an earning capacity to Former Wife far below the uncontested expert response [sic] submitted into evidence?

4. Did the trial court abuse its discretion and commit reversible error when, on reconsideration, it doubled the award of alimony to Former Wife from $2500 per month to $5000 per month after merely listing the relevant factors but not considering all relevant factors as required under 23 Pa.C.S.A. § 3701(b) and applying a reasonable needs analysis?

_____

order. ***Commonwealth v. Moir***, 766 A.2d 1253 (Pa. Super. 2000); ***Valentine v. Wroten***, 580 A.2d 757 (Pa. 1990). To the extent Husband seeks to challenge the order denying reconsideration, such challenge is improper and beyond our purview.

5. Did the trial court abuse its discretion and commit reversible error in assessing the value of the marital estate and applying the equitable distribution scheme?

Husband's Brief at 4-5 (suggested answers omitted).

In her cross-appeal, Wife raises three issues:

1. Although properly determining that Husband's [Judicial Income] constituted a marital asset, did the Trial Court abuse its discretion in its equitable distribution of Husband's Judicial [Income] by failing to provide for a deferred distribution of Wife's marital share?

2. Whether the Trial Court abused its discretion in adopting Husband's valuation of Wife's SERS pension as Husband's valuation included post-separation contributions, which are unequivocally precluded from inclusion in the valuation of the asset in equitable distribution, and by attributing to Wife a purported withdrawal from her SERS pension?

3. Whether the Trial Court committed an abuse of discretion in valuing Husband's Schwab IRA as of the date of separation, rather the [sic] date distribution, despite Husband's Schwab IRA growing dramatically in value post separation due to market increases on the marital portion of the asset?

Wife's Brief at 7-8 (suggested answers omitted).

**Wife's Cross-Appeal**

As a preliminary matter, we address our jurisdiction over Wife's cross-appeal. Pennsylvania Rule of Appellate Procedure 903 governs the filing of cross-appeals, and states in pertinent part:

. . . [I]f a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days of the date on which the first notice of appeal was **served**, or within the time otherwise prescribed by this rule, whichever period last expires.

Pa.R.A.P. 903(b) (emphasis added). The appeal period is strictly construed, and we have no jurisdiction to expand the period or excuse the failure to file

a timely notice of appeal. Instantly, Husband filed his timely notice of appeal on May 21, 2018. Wife filed a notice of cross-appeal, which was docketed on June 5, 2018, 15 days after Husband filed his notice of appeal. Thus, ostensibly, Wife's cross-appeal is untimely as it was filed beyond the 14 days prescribed in Pa.R.A.P. 903(b).

However, Husband did not serve Wife with his notice of appeal until May 23, 2018. Accordingly, Wife had 14 days from the date she was **served** with the notice of appeal to file a cross-appeal. **See** Pa.R.A.P. 903(b). As Wife filed her cross-appeal on June 5, 2018, 13 days from the date she was served with Husband's notice of appeal, it is timely. **See id.**

## The Parties' Economic Claims

Turning to the issues before us, both Husband and Wife assert that the trial court erred in formulating its equitable distribution award. At the outset, we underscore the economic complexity of the parties' issues. We further observe:

> We review a challenge to the trial court's equitable distribution scheme for an abuse of discretion. **Brubaker v. Brubaker**, 201 A.3d 180, 184 (Pa. Super. 2018) (citation omitted). "We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence." **Id.** We will not find an abuse of discretion "unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." **Carney v. Carney**, 167 A.3d 127, 131 (Pa. Super 2017). When reviewing an award of equitable distribution, "we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." **Hayward v. Hayward**, 868 A.2d 554, 558 (Pa. Super. 2005).

When determining the propriety of an equitable distribution award, this Court must consider the distribution scheme as a whole. ***Mundy v. Mundy***, 151 A.3d 230, 236 (Pa. Super. 2016). "We do not evaluate the propriety of the distribution order upon our agreement with the court's actions nor do we find a basis for reversal in the court's application of a single factor. Rather, we look at the distribution as a whole in light of the court's overall application of the 23 Pa.C.S.A. § 3502(a) factors for consideration in awarding equitable distribution. If we fail to find an abuse of discretion, the order must stand." ***Harvey v. Harvey***, 167 A.3d 6, 17 (Pa. Super. 2017) (citation and internal brackets omitted). Finally, "it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence." ***Brubaker***, 201 A.3d at 184 (citation omitted).

***Hess v. Hess***, -- A.3d --, 2019 WL 2334113, at *2 (Pa. Super. 2019).

## Husband's Claims

Husband's first and second issues concern his Judicial Income, which implicate the interplay of federal and state law. In his first issue, Husband asserts that the trial court erred in concluding that the annuity he receives upon satisfying the Rule of 80 is a retirement benefit subject to equitable distribution.

Section 371 of the United States Code reads, in relevant part:

### § 371. Retirement on salary; retirement in senior status

(a)    Any justice or judge of the United States appointed to hold office during good behavior may retire from the office after attaining the age and meeting the service requirements, whether continuous or otherwise, of subsection (c) and shall, during the remainder of his lifetime, receive an annuity equal to the salary he was receiving at the time he retired.

(b)    (1) Any justice or judge of the United States appointed to hold office during good behavior may retain the office but

- 8 -

retire from regular active service after attaining the age and meeting the service requirements, whether continuous or otherwise, of subsection (c) of this section and shall, during the remainder of his or her lifetime, continue to receive the salary of the office if he or she meets the requirements of subsection (e)

(2) In a case in which a justice or judge who retires under paragraph (1) does not meet the requirements of subsection (e), the justice or judge shall continue to receive the salary that he or she was receiving when he or she was last in active service or, if a certification under subsection (e) was made for such justice or judge, when such a certification was last in effect. The salary of such justice or judge shall be adjusted under section 461 of this title.

28 U.S.C.A. § 371. Husband urges this Court to characterize his Judicial Income as a "salary guarantee," rather than a retirement benefit subject to equitable distribution, based on *Adams v. Comm'r of Internal Revenue*, 841 F.2d 62 (3d Cir. 1988). Husband's Brief at 24-26; *see also U.S. v. Hatter*, 532 U.S. 557 (2001).

The *Adams* decision is "an appeal by the Commissioner of Internal Revenue from a decision of the Tax Court allowing certain deductions for contributions to individual retirement accounts (IRA)," pursuant to Section 219 of the United States Code. *Adams*, 841 F.2d at 63; *see also* 26 U.S.C.A. § 219 (effective to Dec. 31, 1996) (current version at 26 U.S.C. § 219 (effective March 23, 2018)). Although *Adams* is not on point, Husband cites its discussion of Section 371 as authority for finding that Husband's Judicial Income is not a retirement plan. The *Adams* court stated: "Thus, we cannot regard 28 U.S.C. §§ 371(a), 371(b) and 372(a) as establishing a retirement plan for judges. Further, we cannot possibly regard the provisions of the

Constitution itself providing for lifetime appointments to be a retirement plan."

*Id.* at 65. According to Husband, **Adams** explicitly concludes that Section 371 does not confer a retirement benefit upon federal judges; rather, Section 371 is a salary guarantee not subject to equitable distribution.

Husband further contends that Section 371 income constitutes a salary — and not retirement — by highlighting the "stark differences" between a traditional pension and Husband's Judicial Income. Husband argues:

> In direct contrast with a defined benefit plan, [Husband's Judicial Income] does not have a [s]ummary [p]lan [d]escription; [Husband] is not considered a participant in a plan; does not provide for alternate payee status; provides no options upon retirement such as a single life annuity; and, has no vesting schedule. [Husband's Judicial Income] payment to federal judges is the same as their salary; whereas the monthly benefit under a defined benefit plan is calculated based on the participant's most recent average salary but is less than the salary (and could be reduced further is a survivor benefit option is selected).

Husband's Brief at 29-30.

Wife counters Husband's reliance on **Adams** by citing **Porter v. Comm'r of Internal Revenue**, 856 F.2d 1205 (8th Cir. 1988), which was decided six months after **Adams**. Like **Adams**, **Porter** examined whether Section 371 is a retirement plan for purposes of Section 219. This time, however, the court held:

> Section[ ] 371 . . . thus specifically provide[s] retirement income for the remainder of a judge's life after regular, active service has come to an end. . . . We believe the availability to a judge of these statutory options for the judge's years beyond regular, active service constitutes a retirement plan within the context of section 219.

*Porter*, 856 F.2d at 1210-11.

Wife also cites *Major v. Major*, 518 A.2d 1267 (Pa. Super. 1986), and *Braderman v. Braderman*, 488 A.2d 613 (Pa. Super. 1985), to support her position that Husband's Judicial Income is a retirement benefit subject to equitable distribution. In *Major*, this Court held that the clear language of the Pennsylvania Divorce Code includes a military retirement pension as marital property when acquired during the marriage. We opined:

> . . . In light of the sacrifices of those families in the armed services, including long periods of separation while on duty or on assignment overseas, the contributions of both spouses to the household enable the enlisted spouse to continue serving until the pension vests after 20 years of service. Thus we reject appellant's argument that military pension benefits are not marital property.

*Major*, 518 A.2d at 1270.

Similarly, in *Braderman*, this Court concluded that state retirement benefits were marital property subject to equitable distribution. We emphasized:

> Each spouse has a reasonable expectation of enjoying the monies received from an employee retirement fund. In order to "effectuate economic justice between the parties", equity demands that both parties share in this asset acquired during the marriage.

*Braderman*, 488 A.2d at 617.

Wife asserts that this Court has soundly rejected efforts to exclude retirement benefits from equitable distribution. Wife's Brief at 25; *see also Major, supra*; *Braderman, supra.* Thus, Wife contends that Husband's Judicial Income is a marital asset subject to equitable distribution.

*Major* and *Braderman*, however, are also distinguishable. In both cases, the annuity was already determined to be a retirement benefit – specifically, a pension. This Court's review was limited to deciding whether these retirement benefits were marital property for purposes of equitable distribution.

Here, our exhaustive research has failed to uncover persuasive legal authority from either the federal courts or this Commonwealth from which we may determine definitively that Husband's Judicial Income is salary or retirement. We further acknowledge the restricted relationship a state court has in applying a federal statute when that statute has been the subject of interpretation and application by a federal governmental body. *See* U.S. CONST. art. VI, cl.2; *see also Council 13, Am. Fed'n of State, County & Mun. Employees, AFL-CIO v. Rendell*, 986 A.2d 63, 77 (Pa. 2009) ("it is fundamental that by virtue of the Supremacy Clause, the State courts are bound by the decisions of the Supreme Court with respect to . . . federal law, and must adhere to extant Supreme Court jurisprudence."). The federal statute must be given the meaning and effect attributed to it by our federal government.

To date, the United States Supreme Court has not issued an opinion interpreting Section 371 in such a way that would allow us to determine whether Husband's Judicial Income is a marital asset subject to equitable distribution. We recognize that several ancillary resources exist that would

help us address this issue. For example, it is well known that pensions in this Commonwealth are not subject to the Pennsylvania Income Tax. *See* 61 Pa. Code § 101.6(c)(8)(i); *see also AMP Products Corp. v. Com.*, 593 A.2d 1, 3 n.6 (Pa. Commw. Ct. 1991). We take judicial notice of the fact that numerous federal judges have retired from office in our Commonwealth, and receive income pursuant to Section 371. Evidence of how the Pennsylvania Department of Revenue taxes (or does not tax) their Section 371 income would be highly probative of whether the income is salary or retirement.

Notably, our review of the record indicates that Husband intended to present the testimony of "[a] representative of the Administrative Office of the United States Courts" to explain his Judicial Income. Husband's Pre-Trial Statement, 1/9/17, at 2. It is unclear from the record, however, why this witness was not called to testify at the hearing.

Likewise, Wife sought to introduce the testimony of Beth A. Mascetta, CPA, CVA, as an expert witness, who authored a report on Husband's Judicial Income. N.T., 11/28/17, at 146. The trial court, however, denied Wife's request to present Ms. Mascetta's testimony because "I don't see how testimony from this witness would change the math I have to do. I have to come up with a date or some formula to do it. But how, [Counsel for Wife], are you saying your witness would change what I need to do?" *Id.* at 147. Although we cannot speculate as to Ms. Mascetta's testimony, we question the trial court's decision to preclude potentially valuable testimony concerning Husband's Judicial Income.

- 13 -

Consistent with the foregoing, we are constrained to remand this issue for further proceedings. As this Court has held, "where there is insufficient evidence to support the trial court's order, the judgment is manifestly unreasonable." **Strawn v. Strawn**, 664 A.2d 129, 131 (Pa. Super. 1995). Here, the evidence of record is devoid of evidence to support a determination as to Husband's Judicial Income. Given the deficiency, the proper course is remand to the trial court so the parties may avail themselves of evidentiary proceedings in which to create a record regarding Section 371, and specifically, Husband's Judicial Income.

In his second issue, Husband contends that even if his Judicial Income is marital property subject to equitable distribution, the trial court erred by engaging in its own actuarial calculation to determine a present value. Husband's Brief at 31-35. Husband notes that the parties agreed, notwithstanding Husband's objection to the characterization of his Judicial Income as retirement rather than salary, to utilize a deferred distribution method at equitable distribution. **See** Post-trial Stipulations, 3/9/18, at 3 (unpaginated). Thus, Husband asserts that the trial court erred by applying the immediate offset method and calculating a present value utilizing evidence not in the record.

Pennsylvania law provides two methods for distributing a pension when dividing marital assets. **Miller v. Miller**, 577 A.2d 205 (Pa. Super. 1990). The first method, "immediate offset," awards a percentage of the marital portion of the value of the pension to the party earning it, and offsets the

- 14 -

marital value of this pension with other marital assets at equitable distribution. *Id.* at 208-09. This method is preferred where the estate has sufficient assets to offset the pension, because it does not require the court to retain jurisdiction indefinitely. *Id.* at 209. The second method, "deferred distribution," generally requires the court to retain jurisdiction until the pension is collected, at which point the pension is divided according to the court's order. *Id.* This method is more practical where the parties lack sufficient assets to offset the marital value of the pension. *Id.*

> We have recognized that neither distribution scheme will be appropriate to all cases. Rather, the trial court must balance the advantages and disadvantages of each method according to the facts of the case before it in order to determine which method would best effectuate economic justice between the parties.

*Lyons v. Lyons*, 585 A.2d 42, 47 (Pa. Super. 1991).

In this case, the parties stipulated that if the court determined that Husband's Judicial Income was retirement income subject to equitable distribution, then a deferred distribution method would be the appropriate method to effectuate equitable distribution. Post-trial Stipulations, 3/9/18, at 3 (unpaginated). Both parties expressly recognized that the marital estate lacks sufficient assets to offset the marital value of Husband's Judicial Income.

Regardless of the parties' stipulations, the trial court proceeded to place a present value on the Judicial Income. The trial court arbitrarily imputed to Husband a life expectancy of 82, and a retirement age of 65, from which to calculate the present value of the Judicial Income. In so doing, the court multiplied Husband's current salary of $208,000 per year by 17 (the potential

number of years of retirement based on a retirement age of 65 and a life expectancy of 82 years) to arrive at a present value of $3,536,000.

Upon careful review, we find the valuation method employed by the trial court to be in error. Critically, the parties agreed to the deferred distribution method and Wife concedes that "the [t]rial [c]ourt should have utilized the deferred distribution method. Accordingly, Wife requests that this Court direct the [t]rial [c]ourt to apply the deferred distribution method to Husband's Judicial [Income]." Wife's Brief at 37.

Mindful of the trial court's wide discretion to value assets and our highly deferential standard of review, we nonetheless conclude that the court erred in calculating the present value of Husband's Judicial Income. When valuing assets, a trial court must base its decision on evidence of record. *See Smith v. Smith*, 904 A.2d 15, 21-22 (Pa. Super. 2006) (When valuing assets, "the trial court must exercise discretion and rely on estimates, inventories, records of purchase prices, and appraisals submitted by both parties."). The value that the trial court assigned to Husband's Judicial Income — $3,536,000 — lacks support in the record, and neither Husband nor Wife presented this figure, nor evidence in support of this figure, to support the valuation.

The trial court's imputed average life expectancy of 82 years in its calculation of the present value is in error. This value is troubling because the value considers evidence not of record and the trial court fails to cite any source from which it gleaned this information. "A trial court may not consider evidence outside of the record in making its determination. Nor may this

[C]ourt uphold a trial court's order on the basis of off-the-record facts."

***Johnson v. Johnson***, 153 A.3d 318, 322 (Pa. Super. 2016) (citations omitted).[3]

Likewise, the soundness of the trial court's valuation is speculative at best due to the lack of evidence supporting the court's arbitrary determination that Husband would retire at age 65.

> There is ample empirical and statistical evidence to justify the conclusion that all workers do not retire at the same age. A variety of factors impact on an individuals [*sic*] selection of a retirement age. In the great majority of qualified defined benefit plans the participant is given an option to retire within a range of dates. The breadth of this range is from the date an individual becomes vested and decides to opt for a vested deferred retirement benefit . . . to the date an individual is required to terminate employment as a result of demonstrable physical or mental incapacity to perform . . . . Because of the actual range of retirement options available to the employed spouse, evaluators who assume that all workers retire at the same age or point are to be viewed with skepticism.

***DeMarco v. DeMarco***, 787 A.2d 1072, 1078-79 (Pa. Super. 2001) (citing Rounick, *Pennsylvania Matrimonial Practice*, Vol. 1B, § 46C:1 at 14). Notably, Husband testified that he intends to work past age 65. ***See generally,*** N.T., 11/28/17, at 36-42, 90 ("I have every hope to be serving well after age sixty-five, for all the reasons that I said before.").

---

[3] We further recognize the comment to Rule 2.4 of the Code of Judicial Conduct, which states: "Confidence in the judiciary is eroded if judicial decision making is perceived to be subject to inappropriate outside influences."

Based on the foregoing, the trial court abused its discretion by adopting a present value for Husband's Judicial Income. Moreover, the trial court's error is fatal to the overall equitable distribution award. While the court did not quantify its overall distribution scheme,[4] it appears that the trial court's decision to award Wife the entire value of her SERS pension and permanent alimony in the amount of $5,000 per month was based on the court's belief that Husband would receive a more valuable asset – 100% of his Judicial Income. *See* Trial Court Opinion, 4/24/18, at 14. Thus, because the issue of Husband's Judicial Income must be revisited on remand, the overall distribution is implicated. We therefore remand for the trial court to apply the deferred distribution method in dividing Husband's Judicial Income in equitable distribution.[5]

In his third issue, Husband argues that the trial court erred by assigning Wife an earning capacity of $50,000 per year. Husband avers that the assigned earning capacity belies the evidence presented at trial and is in direct contravention of the Pennsylvania Rules of Civil Procedure. In Husband's view, Wife "substantially limited the scope of her search efforts" to a field that pays less and has less opportunities. Husband's Brief at 43. Husband suggests that Wife's earning capacity is substantially higher than the value assigned by the trial court. We disagree.

---

[4] *See* discussion *infra.*

[5] We recognize that no recalculation will be necessary if it is determined that Husband's Judicial Income is salary, as opposed to retirement income.

- 18 -

"A person's earning capacity is defined not as an amount which the person could theoretically earn, but as that amount which the person could realistically earn under the circumstances, considering his or her age, health, mental and physical condition and training." **Gephart v. Gephart**, 764 A.2d 613, 615 (Pa. Super 2000). Past earnings alone are not sufficient to support a determination of earning capacity without corroborating evidence that the party still has the capacity to earn that amount. **See D.H. v. R.H.**, 900 A.2d 922 (Pa. Super. 2006) (holding trial court erred in determining earning capacity based solely upon party's most recent tax return). Moreover, Pennsylvania Rule of Civil Procedure 1910.16-2(d)(4), addressing earning capacity, provides:

> If the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity. **Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity.** In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P. 1910.16-2(d)(4) (emphasis added).

In giving its reasons for assigning Wife an earning capacity of $50,000 per year, the trial court stated:

- 19 -

> Based on the evidence presented as to her prior salaries, this Court finds her earning capacity to be $50,000.00 annually. While Husband argues that he submitted evidence establishing Wife's annual earning capacity to be $80,000.00, Wife testified very credibly that she has applied for a significant number of jobs, for which she is qualified, without any success. Thus, the Court finds a reasonable earning capacity for Wife, given her age and lack of recent employment in the legal field, to be more accurately established at $50,000.00 per year.

Trial Court Opinion, 4/24/18, at 9.

The record is devoid of evidence that Wife "willfully failed to obtain or maintain appropriate employment[.]" Pa.R.C.P. 1910.16-2(d)(4). Rather, the trial court found Wife's testimony concerning her employment search to be "very credible." Trial Court Opinion, 4/24/18, at 9. The record further reveals that Wife is now in her early sixties and, at the time of the equitable distribution hearing, had been seeking employment unsuccessfully for over 18 months. *See* Wife's Exhibit 4. With Husband's support, Wife left private practice over 20 years ago, and Wife testified that her expertise and experience is limited to public interest and academia. N.T., 11/28/17, at 128-30. While Husband suggests that Wife "has an annual earning capacity of (1) anywhere from $65,000 to $75,000 in the academic community; and (2) anywhere from $95,000 to $121,680 in the private sector," Husband's Brief at 42, the trial court, as finder of fact, was "free to believe all, part, or none of the evidence," and this Court will not disturb the trial court's credibility determinations. *Lee v. Lee*, 978 A.2d 380, 382 (Pa. Super. 2009). Thus, we

conclude that imputing an earning capacity of $50,000 per year to Wife was reasonable and the trial court did not abuse its discretion.

In his fourth issue, Husband contends that the trial court erred in awarding Wife $5,000 per month in permanent alimony without first engaging in a reasonable needs analysis as required by 23 Pa.C.S.A. § 3701(b).

> Our standard of review regarding questions pertaining to the award of alimony is whether the trial court abused its discretion. We previously have explained that the purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met. Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay. Moreover, alimony following a divorce is a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill.

*Teodorski v. Teodorski*, 857 A.2d 194, 200 (Pa. Super. 2004).

Section 3701(b) of the Divorce Code states:

In determining whether alimony is necessary and in determining the nature, amount, duration and manner of payment of alimony, the court shall consider all relevant factors, including:

   (1)   The relative earnings and earning capacities of the parties.

   (2)   The ages and the physical, mental and emotional conditions of the parties.

   (3)   The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

   (4)   The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under section 6102 (relating to definitions).

(15) The Federal, State and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S.A. § 3701(b). "To determine whether alimony is necessary and to establish the appropriate nature, amount, and duration of any alimony payments, the court is required to consider **all** relevant factors, including the 17 factors that are expressly mandated by statute." ***Lawson v. Lawson***, 940 A.2d 444, 447 (Pa. Super. 2007) (emphasis in original). We note the factors in Section 3701(b) do not create an exhaustive list. ***Ressler v. Ressler***, 644 A.2d 753 (Pa. Super. 1994).

Additionally, this Court has repeatedly held that an asset awarded in equitable distribution may not be included in an individual's income for purposes of calculating support payments. ***See Miller v. Miller***, 783 A.2d 832, 835-36 (Pa. Super. 2001) (holding that money received from the sale of an asset awarded in equitable distribution may not be included in an individual's income for purposes of calculating support payments); ***Rohrer v. Rohrer***, 715 A.2d 463, 466 (Pa. Super. 1998) (stating that this Court does not condone "double dipping," *i.e.*, using the same revenue as a source for support and equitable distribution); ***Berry v. Berry***, 898 A.2d 1100, 1105 (Pa. Super. 2006) (holding that a partnership accrual account was marital property and, thus, could not be considered income).

Here, regarding the Section 3701 factors, the trial court noted that Husband and Wife are in their early 60s. Trial Court Opinion, 4/24/18, at 9. The parties were married for over 30 years, and both are lawyers. ***Id.*** Husband currently sits as Chief Judge in the Middle District of Pennsylvania,

while Wife is currently seeking employment after her legal education position was eliminated. *Id.* Wife has not practiced law in decades and "played a larger role as homemaker during the parties' marriage." *Id.* at 10. The trial court considered that Wife brought $10,000 in student loan debt to the marriage and Husband contributed premarital assets to his Schwab retirement account, but there was no other evidence that either party had substantial assets or liabilities prior to the marriage. *Id.* at 10. The trial court further recognized testimony regarding Husband's marital misconduct, but determined that the evidence did not "justify an inclusion of this factor." *Id.*

After reciting the Section 3701(b) factors, the trial court ordered Husband to pay $5000 per month in permanent alimony, "or until such events would take place to justify its modification or termination under 23 Pa.C.S.A. § 3701(e)." Trial Court Opinion, 4/24/18, at 14. The court reasoned that "60.49%[6] of Husband's current $208,000 annual salary equals $125,819. Divided equally, this would result in approximately $63,000/year. With the current alimony award of $5,000, Wife will be receiving $60,000/year." *Id.* at 14 n.20.

---

[6] 60.49% represents the coverture fraction for the deferred distribution method stipulated to by the parties when dividing Husband's Judicial Income. *See* Post-trial Stipulations, 3/9/18, at 3 (unpaginated).

Essentially, the trial court calculated Wife's alimony award by applying a coverture fraction[7] to Husband's Judicial Income to determine the marital portion of the income. The court then divided the "marital portion" of Husband's Judicial Income equally,[8] and attributed to Husband an income of $63,000 per year for purposes of calculating alimony. In order to presumably keep the relative earnings of the parties equal, the trial court awarded Wife $5,000 per month – $60,000 per year – in permanent alimony.

We have long held that marital property subject to equitable distribution may not be included in an individual's income for purposes of calculating support payments, and have characterized this practice as "double dipping." *See Miller*, 783 A.2d at 835-36; *Rohrer*, 715 A.2d at 466; *Berry*, 898 A.2d at 1105. The trial court's equitable distribution order factors Husband's Judicial Income – an asset already distributed in equitable distribution – in the calculation of Husband's income and Wife's alimony. This calculation constitutes a "double-dip." Accordingly, we reverse the trial court's order as

_____

[7] A coverture fraction is used to calculate the marital portion of a pension plan: the denominator of the coverture fraction is the number of months the employee spouse worked to earn the pension benefit and the numerator is the number of such months accrued during the marriage prior to final separation. *See* 23 Pa.C.S.A. § 3501(c).

[8] This division presumably represents the trial court's intent to effectuate a 50-50 distribution of the marital estate. However, again, the trial court did not articulate an overall numerical/percentage distribution. *See* discussion *infra*.

to alimony, and remand for the recalculation of Wife's alimony, with due consideration to the Section 3701(b) factors.[9]

In his fifth and final claim, Husband argues that the trial court erred in dividing the marital assets and creating the final equitable distribution scheme. Husband specifically alleges two instances of error: 1) the trial court erred when it stated that the parties had agreed to divide certain marital assets; and 2) the trial court erred when it failed to designate and apply a percentage to the equitable distribution scheme. Husband's Brief at 45, 47.

We agree. The trial court erred when it stated that "many of [the assets] have already been divided by consent of the parties." Trial Court Opinion, 4/24/18, at 13. This statement was made in reference to the proceeds from the sale of the marital residence, which were split by the parties 80%-20% in favor of Wife. According to the trial court, this division was made by consent of the parties and did not need to be addressed by the trial court or included in the final equitable distribution award.

Simply put, both Husband and Wife testified that Wife received a larger percentage of the proceeds from the sale of the marital residence as an advance against her share of the marital estate. *See* N.T., 11/28/17, at 22-24, 172. Thus, it was error by the trial court to disregard the funds the parties received from the sale of the marital home when the court formulated the equitable distribution award. As stated above, remand is warranted in light

---

[9] Wife concedes that "the alimony award was a *de facto* deferred distribution of Wife's share of Husband's Judicial [Income]." Wife's Brief at 44.

of our decision concerning Husband's income and Wife's alimony; we likewise remand for the trial court to consider the funds the parties received from the proceeds of the marital residence in recalculating equitable distribution.

Additionally, the trial court erred when it failed to state the distribution scheme it intended to effectuate in terms of what percentage of the marital estate each party would receive. While we acknowledge that the trial court may divide the marital estate as it deems appropriate, it must make the distribution scheme clear. *See Mundy v. Mundy*, 151 A.3d 230, 236 (Pa. Super. 2016) (recognizing that this Court reviews the distribution scheme as a whole on appeal). Accordingly, upon remand, we direct the trial court to quantify the distribution scheme in equitable distribution.

### Wife's Claims

We now turn to the issues Wife raises in her cross-appeal. She first argues that the trial court erred in calculating the present value of Husband's Judicial Income. Underlying this issue are essentially the same arguments Husband made in his second issue. Thus, having already considered this issue and disposed of this issue, we turn to Wife's next claim.

In her second issue, Wife challenges the trial court's assessment of her SERS pension. Wife asserts two allegations of error: (1) the trial court erred by including post-separation contributions in valuing her SERS pension; and (2) the trial court "double-dipped" in assigning assets during equitable distribution by attributing both the present value of the pension and the lump sum distribution to Wife.

We first address Wife's claim that the trial court erred by including post-separation contributions when valuing her pension. Wife contends:

[T]he trial court adopted the value of [Wife's SERS account] as of December 31, 2015. As stated by the Director [of SERS], the State makes contributions to Wife's SERS pension of 4% every year on the remaining balance of the account Accordingly, the value of the SERS pension as of December 31, 2015 would include post-separation contributions by the State.

Wife's Brief at 73.

The Divorce Code provides that "[p]roperty acquired after final separation until the date of divorce" is not marital property. 23 Pa.C.S.A. § 3501(a)(4). Likewise, in **Schneeman v. Schneeman**, 615 A.2d 1369 (Pa. Super. 1992), this Court explained that because an annuity is:

deferred compensation, the portion of the retirement reserve attributable to the duration of the marriage is marital property. While increases due to interest or returns on investment in the value of the amount contributed during the marriage are marital property, contributions by the employee or employer after the date of separation are not marital property.

**Id.** at 1376.

At trial, Wife presented the testimony of David Tarsi, the director of the bureau of member services for SERS. N.T., 11/28/17, at 103. Mr. Tarsi testified with regard to the present value of Wife's SERS pension, the lump sum withdrawal Wife made from her SERS pension, and the contributions that comprise a participant's SERS account. **See id.** at 103-07. In explaining the components of Wife's SERS account, Mr. Tarsi testified:

A member makes contributions as a state employee, it is mandatory. 6.25% goes into the retirement system. **We pay**

**statutory 4% interest every year on what we call the lump sum with the contributions and interest that a member contributes over their career**.

*Id.* at 104 (emphasis added).  Wife suggests that the 4% statutory interest is a non-marital employer contribution exempt from equitable distribution.  Wife's Brief at 73.  We disagree.

Under the State Employees' Retirement Code and accompanying regulations, the definition of "statutory interest" in Wife's SERS account is "[i]nterest at 4% per annum, compounded annually."  71 Pa.C.S.A. § 5102.  The comment to the definition of "statutory interest" further reflects that "the rate of interest payable is statutorily defined."  71 Pa.C.S.A. § 5102, comment.  The plain meaning of statutory interest is that employees receive 4% **interest**, compounded annually, on their SERS investment.

The Code's definition and comment relating to statutory interest make no mention of employer contributions.  Without more, we cannot interpret "statutory interest" to mean employer contributions.  The provisions of the State Employees' Retirement Code is unambiguous on its face and must be given effect in accordance with its plain and common meaning.  "Absent ambiguity, the plain meaning of the statute controls."  *See Sternlicht v. Sternlicht*, 876 A.2d 904, 910 (Pa. 2005).  Accordingly, the trial court did not err in finding that the entire value of the pension was marital property.

Second, Wife argues that the trial court "double-dipped" in calculating the value of Wife's SERS pension for purposes of equitable distribution.  The trial court attributed to Wife $580,252, which was commensurate with the

present value of Wife's SERS pension with **NO** withdrawal of contributions and interest as of December 31, 2016. ***See*** Husband's Exhibit 11 (emphasis in original). The trial court also imputed to Wife a "SERS withdrawal" of $105,704, the value of the lump sum withdrawal Wife rolled into an IRA account. Again, the trial court's distribution scheme constituted an impermissible "double-dip," as it factors the lump sum withdrawal Wife made against her SERS pension. Accordingly, we remand for the trial court to reconsider this aspect of its equitable distribution award.

In her third and final claim, Wife argues the trial court abused its discretion in its valuation of Husband's Schwab IRA. Wife contends the marital portion should have been valued as of the date of distribution, not separation. In support, Wife cites to ***Smith v. Smith***, 653 A.2d 1259 (Pa. Super. 1995), in which this Court stated:

> The increase in the value of Husband's deferred compensation plan, employee savings plan and IRA, from the date of separation until the date of distribution, was not a result of Husband's post-separation contributions. Husband admitted that he made no contributions to these retirement funds post-separation. Therefore, the most appropriate date for valuing Husband's various pension plans is the date of distribution.

***Smith***, 653 A.2d at 1271. The basis for this Court's reasoning in ***Smith*** was that, because there had been a considerable passage of time between the parties' separation and the distribution of their marital assets, substantial fluctuations in the values of those assets may have occurred, which, from an

equitable standpoint, should be reflected in the distribution order. *Id.* at 1270-71.

Here, the parties separated in November 2014, a complaint in divorce was filed in April 2015, and distribution of marital assets was ordered by the trial court in November 2017. Like *Smith*, Husband acknowledged that he made no post-separation contributions to the IRA fund. *See* N.T., 11/28/17, at 85-86. To distribute Husband's Schwab IRA without regard to the significant value fluctuations that occurred would undermine the legislative intent of "effectuating economic justice between the parties and achieving a just determination of their property rights." *Hayward*, 868 A.2d at 558. Thus, we conclude that the trial court erred in valuing Husband's Schwab IRA as of the date of separation, and remand for valuation at distribution.

## Conclusion

Order reversed in part and affirmed in part. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/20/2019