J-S66002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DOUGLAS MCNEILL | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHRISTINE MCNEILL | |
| Appellant | No. 2123 EDA 2019 |

Appeal from the Order June 12, 2019
In the Court of Common Pleas of Monroe County
Civil Division at No: 7877 CV 2014

BEFORE:  STABILE, J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY STABILE, J.:                      **FILED MAY 28, 2020**

Appellant Christine McNeill ("Wife") appeals from an order declaring the parties divorced, granting her exceptions to the master's report in part and denying her exceptions in part.  We affirm in part and vacate in part.  We affirm the order to the extent it denies Wife's exceptions to the date of separation, Wife's interest in the bank accounts, Wife's 55% interest in marital assets, and Wife's right to $1,500.00 per month in alimony.  We vacate the portion of the order denying Wife's exception to her share of an annuity fund managed by MassMutual, the Annuity Fund of Local No. One, I.A.T.S.E. ("IATSE Annuity"), and we remand for recalculation of Wife's share of the IATSE annuity.

Wife and Appellee, Douglas McNeill ("Husband"), married in 1982. Husband worked for years in theatrical rigging in New York City, while Wife

stayed home with the parties' children. On September 18, 2014, Husband filed for divorce. The children were all adults by this time.

On August 21, 2018, a divorce master held an evidentiary hearing. On November 13, 2018, the master filed a report finding that the parties separated in May 2007, proposing a schedule of distribution, and recommending that Wife receive 55% of all marital assets in equitable distribution and $1,000.00 per month in alimony for five years. The master also recommended that Husband convey his interest in the marital residence to Wife. Wife filed timely exceptions to the report, and the trial court held oral argument on February 28, 2019.

In an opinion and order dated June 19, 2019, the trial court granted Wife's exceptions in part and denied them in part. The court granted Wife's exception to alimony and raised her alimony to $1,500.00 per month for five years. Otherwise, the court denied Wife's exceptions and adopted the master's recommendations as to equitable distribution, thus awarding the marital residence and 55% of the marital estate ($379,798.08) to Wife.

Wife filed a timely appeal to this Court and filed a Pa.R.A.P. 1925(b) statement of matters complained of on appeal. The trial court filed a Pa.R.A.P. 1925(a) statement explaining that it addressed all issues in Wife's Rule 1925 statement in its June 12, 2019 opinion.

Wife raises five issues in this appeal, which we re-order for the sake of convenience:

1. Whether the court erred as a matter of law and abused its discretion in determining the parties separated in May 2007?

2. Whether the court erred as a matter of law and abused its discretion in failing to properly value the annuity?

3. Whether the court erred as a matter of law and abused its discretion in failing to properly valuate the bank accounts[?]

4. Whether the court erred as a matter of law and abused its discretion in failing to equitably divide the assets in more favor of Wife based upon the statutory factors?

5. Whether the court erred as a matter of law and abused its discretion in failing to award alimony in an amount and length of time that Wife can maintain the home and survive[?]

Wife's Brief at 5-6.

First, Wife argues that the trial court erred by accepting the master's finding that the parties separated in May 2007. "Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure . . . An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence." *McCoy v. McCoy*, 888 A.2d 906, 908 (Pa. Super. 2005). We conclude that the trial court acted within its discretion by denying Wife's exception to the finding that May 2007 was the date of separation.

Equitable distribution requires the court to "equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors." 23 Pa.C.S.A. §

3502(a). Marital property is "all property acquired by either party during the marriage," subject to eight exceptions. 23 Pa.C.S.A. § 3501(a). "The trial court has discretion as to whether to value the marital property at either the time of separation or the time of trial to obtain an equitable result, but valuation is made as of a date certain." ***Huber v. Etkin***, 58 A.3d 772, 779 n.6 (Pa. Super. 2012). In this case, without objection from either party, the master valued marital property as of the date of separation.

When marital property is valued as of the date of separation, "the determination of the separation date obviously impacts the value of property in that only property acquired prior to the date of final separation is marital property and therefore subject to equitable distribution." ***McCoy***, 888 A.2d at 910. The date of separation is when the parties live "separate and apart," which the Divorce Code defines as "[c]essation of cohabitation, whether living in the same residence or not. In the event a complaint in divorce is filed and served, it shall be presumed that the parties commenced to live separate and apart not later than the date that the complaint was served." 23 Pa.C.S.A. § 3103.

The only evidentiary hearing in this case took place before a master. "A master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the

behavior and demeanor of the parties." ***Childress v. Bogosian***, 12 A.3d 448,

455 (Pa. Super. 2011).

The trial court analyzed the master's finding on the date of separation

as follows:

> At the Master's hearing, Husband testified that the parties separated when he moved out of the martial home in May 2007. Although they had separated twice in the past[,] Husband testified that they were separated in April 1994 until August 1995, and a second separation in May 1997 until July 1998; he had no doubt of the separation when he moved out of the marital home and into a one room efficiency apartment. Husband would continue to support Wife and children. Husband also stated that they did not have sexual relations and they did not sleep together since May 2007. Although Wife claims that they did not separate in May 2007, the Master heard the testimony and was able to observe the demeanor of the parties. The Master noted the unusual circumstances surrounding the refinancing of the martial home. In March of 2010, in the midst of the refinance, Wife sought to have him sign a deed transferring title to the marital residence into her name individually. Husband's name was not printed on the mortgage; however both of the parties eventually signed the mortgage.
>
> The Master heard the testimony presented at the time of hearing and determined that the date of separation was May 2007. When Husband was questioned by Wife's counsel, he stated that he was unaware of Wife's lifestyle or anything about the rest of her life. The Master noted that Wife failed to remember the last time Husband actually slept at the marital home. We will give the Master's report the fullest consideration on this issue because he had the opportunity to observe and assess the witnesses' testimony.

Trial Court Opinion, 6/12/19, at 2-3 (record citations omitted).

To summarize, after observing the parties testify and evaluating the

evidence, the master decided that the date of separation was May 2007,

because Husband's testimony on this subject was clearer and more credible

than Wife's testimony. The trial court accepted this finding because the master had the opportunity to observe and assess the parties' testimony. We see no reason to disturb this decision.

The transcript of the evidentiary hearing reflects that after Husband and Wife married in 1982, Husband worked in theatrical rigging for multiple employers in New York City, the only job for which he ever received training. Wife stayed at home and raised the parties' children, but she did not obtain a job after the children grew up. The parties jointly owned the marital home, a three-story house with four bedrooms at 5252 Hilltop Drive in East Stroudsburg, a residential community known as Blue Mountain Lakes. Husband testified that the parties separated from April 1994 until August 1995 and again from May 1997 until July 1998, but he returned home each time for the children's sake.

Husband testified that the parties finally separated in May 2007. After that, he did not sleep with Wife or have sexual relations with her. He continued to live in the marital residence until one year later, when Wife excluded him from the residence altogether, at which time he rented a one-room apartment. Notably, Wife could not recall the last time Husband slept in the marital residence.

The parties continued to have contact when Husband would give Wife money to support herself and the children, but there was little to no communication. Although there was no order for spousal support or alimony,

Husband paid Wife $4,174.00 per month for mortgage and household expenses. Husband continued to earn money in theatrical rigging until an injury in 2012 permanently ended his career.

This evidence, along with the master's observation of the parties' demeanor during the hearing, provided a sufficient foundation for the master to accept Husband's testimony over Wife's and to find that the parties separated in May 2007. The trial court acted within its discretion by accepting the master's finding.

In her second argument, Wife asserts that the trial court abused its discretion by finding that Husband had only one marital annuity, an annuity fund managed by MassMutual, the Annuity Fund of Local No. One, I.A.T.S.E. ("IATSE Annuity"). Wife also argues that the court's valuation of the IATSE annuity, $506,915.00, was too small, because the court refused to include its post-separation appreciation in value.

Under the Divorce Code, "marital property" generally means "all property acquired by either party during the marriage," 23 Pa.C.S.A. § 3501(a). Further, as we recently explained,

> because an annuity is deferred compensation, the portion of the retirement reserve attributable to the duration of the marriage is marital property. While increases due to interest or returns on investment in the value of the amount contributed during the marriage are marital property, contributions by the employee or employer after the date of separation are not marital property.

*Conner v. Conner*, 217 A.3d 301, 319 (Pa. Super. 2019) (citing *Schneeman v. Schneeman*, 615 A.2d 1369, 1376 (Pa. Super. 1992) (increase in value of

pension due to "earnings" upon the corpus contributed during the marriage prior to separation was rightfully included in marital property)).

The trial court has "wide discretion" in valuing marital assets, but it must base its decision on evidence of record. *Conner*, 217 A.3d at 313. The trial court may rely on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties. *Smith v. Smith*, 904 A.2d 15, 21-22 (Pa. Super. 2006). In the valuation process,

> the court is free to accept all, part or none of the evidence as to the true and correct value of the property. Where the evidence offered by one party is uncontradicted, the court may adopt this value even though the resulting valuation would have been different if more accurate and complete evidence had been presented. [Further,] if one party disagrees with the other party's valuation, it is his burden to provide the court with an alternative valuation. A trial court does not abuse its discretion in adopting the only valuation submitted by the parties.

*Id.* at 22 (citations and punctuation omitted).

Wife argues that Husband had other annuities besides the IATSE annuity that the court failed to include as marital property. We have held above that the parties separated in May 2007. Husband testified that prior to 2007, his employers opened accounts to deposit funds on his behalf, but the IATSE annuity absorbed these contributions in 2003 or 2005. Wife claimed during her testimony that Husband had other annuities at the time of separation, but she failed to introduce any evidence corroborating her position. Due to Wife's failure to produce such evidence, the master properly found, and the trial court properly agreed, that the IATSE annuity was the only marital annuity.

Wife also argues that the trial court erred by failing to hold that some of the post-separation appreciation in the IATSE annuity is marital property. Wife submitted a quarterly IATSE financial statement encompassing the time period in which the parties separated. The statement indicates that the IATSE annuity's balance was $484,480.59 on April 1, 2007 and $517,771.10 on June 30, 2007. Subsequently, Husband continued to work in theatrical rigging, and his employers continued to make contributions to the IATSE annuity, until Husband suffered a career-ending injury in 2012. The IATSE annuity grew to $821,915.00 as of June 30, 2018. The master found that the marital portion of the IATSE annuity at the date of separation was $506,915.00, approximately two-thirds of the difference between the April 1, 2007 and June 30, 2007 balances.

Husband argues that none of the post-separation appreciation is marital property, because it came from his employers' post-separation contributions and strong market conditions. *See Conner*, 217 A.3d at 319. Wife contends that some post-separation appreciation is interest on the marital portion of the annuity. *Id.*; *Schneeman*, 615 A.2d at 1376. Here, the parties separated in May 2007, well over a decade ago. Wife is entitled to receive some portion of any post-separation appreciation on the IATSE annuity, whether that be interest or return on investment. We hold that the trial court properly accepted the master's finding that the IATSE annuity is the only marital annuity. The court, however, abused its discretion by failing to award Wife

any post-separation appreciation in value. We therefore remand this issue to the trial court for further proceedings to determine this sum.

In her third argument, Wife contends the trial court undervalued several marital accounts from PNC, ESSA and NYC Banks because Husband improperly removed money from these accounts. Wife failed, however, to present evidence identifying the amounts that Husband removed. Accordingly, we conclude that the court properly accepted the master's valuation of these accounts.

In her fourth argument, Wife contends that the trial court abused its discretion in adopting the master's equitable distribution proposal. We disagree. The court properly accepted the master's recommendation that Wife receive 55% of the marital estate.

The Divorce Code provides the following with regard to equitable distribution of marital property:

> (a) General rule.--Upon the request of either party in an action for divorce or annulment, the court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors. The court may consider each marital asset or group of assets independently and apply a different percentage to each marital asset or group of assets. Factors which are relevant to the equitable division of marital property include the following:
>
> > (1) The length of the marriage.
> >
> > (2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S.A. § 3502(a). "The weight accorded the various factors is dependent on the circumstances and is a matter within the court's discretion."

*Gaydos v. Gaydos*, 693 A.2d 1368, 1376 (Pa. Super. 1997) (*en banc*). "Our

scope of review requires us to measure the circumstances of the case against the objective of effectuating economic justice between the parties in discerning whether the trial court misapplied the law or failed to follow proper legal procedure." **Gates v. Gates**, 933 A.2d 102, 105 (Pa. Super. 2007).

The trial court reasoned as follows in accepting the master's recommendation:

> In his report and recommendations, the Master specifically identified the factors he considered in equitable distribution. He considered the length of the marriage and the ages of both Husband and Wife. The Master recognized the health of the parties as well as the station which each held in the marriage. He acknowledged that Wife stated that she suffers from Raynaud's Disease, classified as a "blood circulation disease" which mainly affects individuals in cold weather. Wife did not consider this to be a debilitating issue. The Master recognized that Wife does not receive any independent income and that during the marriage she did not work but by agreement she cared for the children. Husband, on the other hand, was the primary source of income until he was injured on the job in December 2012. Husband has never been able to return to work since his injury.
>
> When we consider all of the factors and circumstances present in this case, we find no error with the recommended distribution. Wife is not entitled to Husband's non-marital property. . .

Trial Court Opinion, 6/12/19, at 6-7. We conclude that this was a proper exercise of the court's discretion.

Wife argues that the court should have awarded her a portion of Husband's workers compensation settlement or award. Wife also claims that she needs an even greater percentage of the marital estate to pay the mortgage and taxes on the marital home that the court awarded her. These claims are unpersuasive. As Husband points out, there is no evidence that a

workers compensation settlement is imminent, and in any event, a settlement or award is non-marital property because it relates to a post-separation injury. Moreover, while Wife may not be content with her 55% share, we see nothing in the record that reflects an abuse of discretion. Therefore, we decline to disturb the court's decision.

Finally, Wife argues that the trial court erred by declining to award more than $1,500.00 per month in alimony. As noted above, the master recommended $1,000.00 per month in alimony for five years, but the court raised this amount to $1,500.00 per month. We hold that the trial court acted within its discretion by denying additional alimony.

The Divorce Code provides:

(a) **General rule.--**Where a divorce decree has been entered, the court may allow alimony, as it deems reasonable, to either party only if it finds that alimony is necessary.

(b) **Factors relevant.--**In determining whether alimony is necessary and in determining the nature, amount, duration and manner of payment of alimony, the court shall consider all relevant factors, including:

(1) The relative earnings and earning capacities of the parties.

(2) The ages and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under section 6102 (relating to definitions).

(15) The Federal, State and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

- 14 -

> (17) Whether the party seeking alimony is incapable
> of self-support through appropriate employment.

23 Pa.C.S.A. § 3701. The purpose of "alimony is . . . to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met." ***Gates v. Gates***, 933 A.2d 102, 106 (Pa. Super. 2007). As such, alimony is based upon the reasonable needs established by the parties during the course of their marriage. ***Id.*** "Moreover, alimony following a divorce is a *secondary remedy* and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill." ***Id.*** (emphasis in original).

The trial court reasoned:

> The Master noted Wife testified that she needs to receive alimony in the amount Husband has been paying her in the last several years. Wife did not receive alimony pendent lite (APL) because of the payments Husband was making to her. In his report and recommendation, the Master noted that the marriage lasted 36 years; however, the parties were separated since May 2007. Nevertheless, Husband continued to make payments to Wife to maintain the household. Husband is now disabled and Wife has not been employed outside of the home since prior to the marriage, as such, she has little if any employable skills. Wife will be eligible for social security benefits in approximately 4 years. The Master recommended 5 additional years of alimony in the amount of $1,000.00.

> Alimony, if any, will be awarded based upon the reasonable needs established by the parties during the course of the marriage. We believe that Wife is entitled to alimony based upon the duration of the marriage and the earning capacity of each party. The Master considered Wife's role as a homemaker and primary caregiver for the parties' children. Although Husband is disabled, Wife has been out of the work force for at least 36 years and has little prospect

of becoming gainfully employed at age 61. Wife testified that her income is zero. Husband has acquired substantial assets and we believe a greater award of alimony is appropriate due to the parties' agreement that Wife remain at home with the children and her lack of work experience. We find that the amount of alimony recommended by the Master is not sufficient to sustain Wife until she is eligible for social security benefits.

We have calculated Wife's expenses as set forth in her Income and Expense Statement filed on May 23, 2018. Accordingly, we believe that in order to achieve economic justice, alimony should be paid to Wife at $1,500.00 per month for 5 years when she will be eligible for social security benefits, however, Wife shall be responsible for her own medical insurance, including eye, dental and prescription coverage.

Trial Court Opinion, 6/12/19, at 8-9. We find this reasoning entirely proper and hold that the trial court properly denied additional alimony to Wife above $1,500.00 per month.

Order affirmed with regard to the date of separation, Wife's interest in the bank accounts, Wife's 55% interest in marital assets, and Wife's right to $1,500.00 per month in alimony. Order vacated with regard to Wife's share of the IATSE annuity and remanded for further proceedings in accordance with this memorandum. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/28/20

- 16 -