J-A18007-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JAMES D. BARTOLOVICH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GRACE J. BARTOLOVICH | : | No. 549 WDA 2018 |

Appeal from the Order March 28, 2018
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD15-00213-005

BEFORE:  BOWES, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 3, 2020**

James D. Bartolovich ("Husband") appeals from the March 28, 2018 order that adopted the master's report and recommendation as to equitable division of the parties' property and awarded alimony to Grace J. Bartolovich ("Wife").[1]  Finding merit in several of Husband's claims of error, we vacate the order and remand for further proceedings consistent with this memorandum.

_____

[1] Husband's appeal was interlocutory at the time it was filed, as pre-divorce equitable distribution orders are not final and appealable.  ***See***, ***e.g.***, ***Wilson v. Wilson***, 828 A.2d 376, 378 (Pa.Super. 2003).  However, because the order was finalized by the subsequent entry of the divorce decree, the appeal is properly before us at this time.  ***See Schenk v. Schenk***, 880 A.2d 633, 638 n.2 (Pa.Super. 2005) ("[A]n award of equitable distribution is appealable where a divorce Decree is entered while an appeal is pending.").

Husband and Wife, born in 1950 and 1951, respectively, cohabited for several years before marrying in February 2002.[2] They each had children from prior relationships, but had none together. The marital residence was a house that Wife purchased in 1998 for $39,000. *See* N.T. Hearing, 6/6/17, at 144. The parties undertook improvements to the home, such as the addition of a deck, new kitchen cabinets, and new toilets.

Wife held no employment during the marriage, having begun receiving Social Security Disability in 2001. *See* N.T. Hearing, 6/6/17, at 169. Husband was employed as a steelworker from 1973 until he retired in 2004. His employment provided both a defined benefit pension, as well as a wholly-employer-financed defined contribution plan, which Husband rolled over into a Thrivent account during the marriage. Funds withdrawn from the Thrivent account were used to pay for things such as vehicles, a camper the couple kept at Rose Point, Pennsylvania, and the parties' vacations.

The parties separated in February 2015. In May 2015, Husband filed a complaint seeking a no-fault divorce and equitable distribution. In response, Wife raised claims of alimony *pendente lite* ("APL") and permanent alimony. Wife was awarded $900 per month in APL, and the matter proceeded to a

---

[2] Wife attempted, but failed, to establish that the parties had entered into a common law marriage in 1997 or 1998. Although she challenged the propriety of the master's determination on that issue, she ultimately withdrew her exception. Thus, the date that the marriage commenced is not at issue in this appeal.

hearing before a master on June 6, 2017, at which Husband and Wife were the only witnesses. Scant documentary evidence was offered, and neither side put forth expert valuations of any property. Instead, Husband and Wife testified as to their recollections of the acquisition prices and opined as to the present values of the property at issue.

From the evidence offered, the master determined that the total value of the marital estate was $24,660.46, and that it should be divided equally between Husband and Wife. Notably, the master included in the marital estate both the $6,733.97 that it found to be the marital portion of Husband's Thrivent account and the Rose Point camper that had been purchased with $10,000 of Thrivent funds, but excluded the increase in value of the marital residence based upon a lack of evidence of its value. The master also recommended, based upon his determination that Husband had $3,790 in monthly income while Wife had only $646, that Husband pay Wife $900 per month in alimony for three years following the divorce.

On August 17, 2017, Husband filed exceptions alleging, *inter alia*, that the master improperly (1) refused to assign a value to the marital residence based upon Wife's testimony; (2) failed to assign certain assets per the parties' on-the-record agreements; (3) awarded Wife a portion of the Thrivent funds when the marital portion had fully been spent on marital items; and (4)

awarded alimony based upon a miscalculation of Wife's income. On April 5, 2018, the trial court dismissed Husband's exceptions.[3]

Husband filed a timely notice of appeal. The trial court did not order Husband to file a statement of errors complained of on appeal, and none was filed. On March 28, 2019, the trial court filed an opinion, relying in large part upon the master's report and recommendation, to fulfill its Pa.R.A.P. 1925(a) obligation.

Husband presents this Court with the following questions, which we have renumbered for ease of disposition:

1.  Did the trial court abuse its discretion by not correcting the master's failure to assign a value to the marital residence as testified to by [Wife]?

2.  Did the trial court abuse its discretion by affirming the master's decision [to] include both the Thrivent account and the Rose Point Camper in the equitable distribution award?

3.  Did the trial court abuse its discretion by adopting the master's report and not reimbursing [Husband] for a tax debt that was solely caused by [Wife] in regard to non-marital property, yet solely paid off by [Husband]?

4.  Did the trial court abuse its discretion by not overruling the master's failure to assign [to Wife] certain marital items despite [Wife]'s testimony that she desired such items?

5.  Did the trial court abuse its discretion by affirming the master's decision to not award [Husband] certain items of marital property?

---

[3] The order also indicated that Wife had withdrawn her cross-exceptions.

6.    Did the trial court abuse its discretion by not correcting the master's failure to properly calculate [Wife]'s income and overruling the master's order that [Husband] pay alimony?

Husband's brief at 5-6 (unnecessary capitalization omitted).

We consider Husband's issues mindful of the following standard of review:

[A] trial court has broad discretion when fashioning an award of equitable distribution.  Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure.  We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole.  We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence.  We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

*Carney v. Carney*, 167 A.3d 127, 131 (Pa.Super. 2017) (cleaned up).

We consider Husband's arguments concerning the trial court's inclusion or exclusion of certain assets from the marital estate mindful of the following legal principles.  All property acquired during a marriage, along with increases

in value of nonmarital property, is presumed to be marital property with certain statutory exceptions. 23 Pa.C.S. § 3501(a), (b). Those exceptions, which a party may prove to overcome the presumption, include, *inter alia*, property acquired prior to the marriage, property acquired in exchange for property acquired prior to the marriage, and property acquired after the date of separation. 23 Pa.C.S. § 3501(a)(1), (4), and (b). Increases in value of nonmarital property are "measured from the date of marriage or later acquisition date to either the date of final separation or the date as close to the hearing on equitable distribution as possible, whichever date results in a lesser increase." 23 Pa.C.S. § 3501(a.1).

Husband first faults the trial court for not correcting the master's failure to include any portion of the value of the marital residence in the marital estate. Although Husband does not dispute that the marital residence is Wife's separate property acquired prior to the marriage, he contends that the record demonstrated that the asset increased in value during the marriage, and that testimony of Wife was sufficient to allow the master to determine the value of that increase. Husband's brief at 15-19.

The master indicated that the entire value of the marital residence was treated as Wife's separate property because he "was not provided with any values regarding the real estate as of the date the parties were married and the date they separated," rendering him unable to calculate the marital portion. **See** Report and Recommendation, 7/28/17, at 4. The trial court did

not squarely address the issue in denying Husband's exception, but generally opined that the evidence was vague, and that the master committed no material error or omission. Trial Court Opinion, 3/28/19, at 2-3.

Our review of the record reveals that Husband originally maintained that the marital residence was part of the marital estate. In his preliminary asset and liability summary, Husband listed the residence as the primary marital asset and proposed that it was worth $90,000. *See* Plaintiff's Preliminary Marital Asset Summary, 3/11/16, at unnumbered 2. In an updated listing, Husband indicated a value of $65,000. N.T. Hearing, 6/6/17, at 104. Wife, on the other hand, consistently excluded the real estate from her lists of marital property, and did not deign to enumerate a value for it. *See* Wife's Marital Asset and Liability Summary, 3/11/16, at 3; Wife's Pretrial Statement, 8/10/16, at 4.

At the hearing, Wife testified that she purchased the house for $39,000 in 1998 to serve as a residence for the two of them, rather than pay increased rent at their mutual apartment, but that they opted to put it in her name only because Husband was still in the process of divorcing his first wife. N.T. Hearing, 6/6/17, at 144. Husband began making some of the mortgage payments on the house in 1999, when Wife went on disability and Husband was still working. *Id*. at 5. Wife testified that the current value of the home was "probably in the high 60s." *Id*. at 13.

We agree with Husband that the record contained sufficient evidence of the marital nature of the asset and its historic values to allow the master to reasonably calculate its marital value. Wife, the purchaser of the real estate, testified to its values approximately four years prior to the marriage, and two years after they separated. This Court has held in similar circumstances that the master's exclusion of the increased value of the separate asset in the marital estate warranted reversal. **See Anderson v. Anderson**, 822 A.2d 824 (Pa.Super. 2003) (holding trial court properly adjusted the master's recommendation by including in the marital estate $30,000 related to wife's antique collection, where the parties married in 1983 and separated in 1999, and wife testified to the values of the collection being $10,000 in 1979 and $40,000 in 1998). Accordingly, we conclude that excluding the entire value of the marital residence from the marital estate constituted an abuse of discretion.

Next, Husband argues that the trial court abused its discretion by including both the marital portion of his Thrivent account and the parties' Rose Point camper in the marital estate. Husband contends that the master correctly determined that his Thrivent account included a marital portion valued at $6,733.97. **See** Husband's brief at 26. Husband also accepts that the parties both testified that the Rose Point camper, valued at $6,700 at the time of separation, was purchased with $10,000 of Thrivent funds. **Id**. Husband's complaint is that including both the camper and the marital

Thrivent funds as separate marital assets "is essentially a double-dip" amounting to "counting the same marital funds twice." *Id*. at 26-27.

Again, we agree with Husband. Both Husband and Wife testified that the Rose Point camper was purchased with $10,000 of Thrivent funds. *See* N.T. Hearing, 6/6/17, at 40-41, 166-67. Unlike other purchases Husband made with money withdrawn from the Thrivent account, title to the Rose Point camper was acquired in both Husband's and Wife's names. Hence, there is a clear conversion of one marital asset into another, such that only one may be included in the marital estate. *Cf. Williamson v. Williamson*, 586 A.2d 967, 972 (Pa.Super. 1991) (concluding that no improper double-counting occurred from awarding husband both the marital portion of his business and an airplane allegedly purchased with assets of the sale of that business because the record did not establish that the funds from the business, as opposed to other marital funds such as the cash that husband squirreled away in a refrigerator, were used to purchase the airplane). Thus, the master's inclusion of both the Rose Point camper and the marital portion of the Thrivent account in the marital estate was erroneous, and the trial court erred in denying Husband's exception.

Husband's next claim is that the trial court abused its discretion in failing to rule that he is entitled to reimbursement for a marital debt that he paid with non-marital funds. Specifically, Husband contends that the record "clearly indicates" that the couple incurred a joint tax debt in the amount of

$4,000 as a result of Wife's decision to withdraw cash from her pre-marital retirement account to pay off her mortgage. Husband's brief at 29. He posits that, since he was the only party with income at the time, "this tax debt was then solely paid by" Husband. *Id*. Husband argues that he is "entitled to a reimbursement sufficient to offset an equitable portion of the tax debt[.]" *Id*. at 30.

The only evidence Husband cites in support of this claim of error is the following testimony from Wife, detailing the circumstances of their separation in February 2015:

> What happened around that time was he came home from getting our taxes done from his friend that does taxes. He was drunk, and he was irate because we owed $4,000 because -- his statement to me was because I took the $15,000 and paid the house off. But in retrospect, after having my taxes done --
>
> And he left when the PFA was -- When the cops came and got him, he left.

N.T. Hearing, 6/6/17, at 136.

We cannot agree with Husband's contention that it was "an unreasonable error in judgment" on the part of the master or the trial court to decline to reimburse him based upon this record. Husband's brief at 30. Husband does not direct this Court to a tax return or other evidence establishing what the couple's tax liability was in the year at issue and what it would have been absent Wife's withdrawal. He does not even cite an admission by Wife that her withdrawal was the cause of the couple's tax debt, as she appeared to dispute the accuracy of Husband's position with her

- 10 -

unfinished thought. As Husband fails to direct us to record evidence that warrants disturbing the judgment of the master and trial court on this issue, no relief is due.

Husband's next two issues concern the scheme for dividing the property. We consider them mindful of the following principles:

> A trial court has broad discretion when fashioning an award of equitable distribution. . . . [T]here is no standard formula guiding the division of marital property and the method of distribution derives from the facts of the individual case. . . . Accordingly, the court has flexibility of method and concomitantly assumes responsibility in rendering its decisions.

*Hess v. Hess*, 212 A.3d 520, 523-24 (Pa.Super. 2019) (cleaned up).

Husband's arguments are that the trial court erred in (1) adopting the master's decision to award Husband the camper in which his son resides in Butler because the parties agreed that Wife would receive that asset, Appellant's brief at 22-23; and (2) "affirming the master's failure to award [Husband] certain personal effects, namely tools and an antique cradle." *Id*. at 31 (explaining that the cradle is what was meant by the "bedroom furniture" discussed during the hearing).

The record does indicate that Wife agreed to (1) accept the marital interest in the camper, *see* N.T. Hearing, 6/6/17, at 201-02; and (2) allow Husband to have his tools and bedroom furniture, subject to their valuation. *See id*. at 78-79, 170-73. However, the master's recommendation awards the interest in the Butler camper to Husband, and does not mention the tools or furniture. *See* Report and Recommendation, 7/28/17, at 8-10. As we have

- 11 -

determined that the distribution order must be vacated, we leave it to the parties to address these assets in the new distribution scheme developed on remand.

In his final issue, Husband challenges the trial court's decision to adopt the master's recommendation as to the award of alimony to Wife. The following precepts apply to our consideration of his arguments. "Where a divorce decree has been entered, the court may allow alimony, as it deems reasonable, to either party only if it finds that alimony is necessary." 23 Pa.C.S. § 3701(a).

> Our standard of review regarding questions pertaining to the award of alimony is whether the trial court abused its discretion. We previously have explained that the purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met. Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay. Moreover, alimony following a divorce is a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill.

**Conner v. Conner**, 217 A.3d 301, 315-16 (Pa.Super. 2019) (internal quotation marks omitted).

The master determined that Wife's monthly income is $646. Although the master indicated that "Wife is entitled to receive $751.10 per month from Social Security," it declined to use that number in the absence of "any additional information" about that entitlement. Report and Recommendation,

7/28/17, at 7. The master further found that Wife's unmet needs, after subtracting from her budget her income ($646.00) and her marital portion of Husband's pension ($126.05), was $1,171 per month. *Id*.

Having determined that Husband's monthly income includes $2,109 from Social Security and $1,680.63 from his pension, the master concluded that alimony is appropriate and recommended that Husband pay Wife $900 per month. *Id*. at 2, 8. As Wife owns the marital residence, and thus has the ability to mortgage or sell it to meet her future needs, the master suggested "a relatively short duration" of three years of payments. *Id*. at 8.

Husband's challenge to the master's determination is two-pronged. He contends both that the master erred in calculating Wife's monthly income, and that, once the master's error is corrected, no alimony is warranted. Specifically, Husband points to the following testimony given by Wife on cross-examination:

Q. You're 66 now; correct?

A. Yeah.

Q. Are you drawing down on regular Social Security?

A. Yes.

Q. So, in addition to SSD, you're getting regular Social Security?

A. Not in addition to. This amount went up to 900, the gross, $978.

    [Master]:            That's your gross now, $978?

[Wife]: Yes.

[Wife's counsel]: Beginning July of '17.

[Husband's counsel]: No, '16.

A. My birthday, when I turned 66.

Q. What is the total amount you're receiving?

A. $966.

Q. So when you said you were only receiving 600-something that was wrong?

A . Yes, I guess it was. Yes.

Q. What else have you been wrong about in your testimony?

A. Nothing.

[Wife's counsel]: When did the $966 begin?

[Wife]: March.

[Wife's counsel]: Of what year?

[Wife]: This year. As soon as I turned 66 in February.

[Master]: Let me just ask you, had [Husband's counsel] not asked you, because I was going to hit you with the $751 because that's what it says, at what point were we going to learn it was $978?

[Husband's counsel]: We weren't is my point.

[Master]: I understand. [Wife's counsel], wait a minute. We've been going around and around and around about documents and lack thereof, but it's 300 bucks a month. I get it. It's nobody's fault, but I'm just saying --

> [Wife's counsel]: No, no, no. I pulled this off of a pretrial that was filed with exhibits last summer. The continuance is --
>
> [Master]: Nobody gave me an updated -- I understand.
>
> [Wife's counsel]: I'm sorry.
>
> [Wife]: My apologies.
>
> [Wife's counsel]: No, my apologies.

N.T. Hearing, 6/6/17, at 206-08.

Despite these clear admissions on the record that Wife's income was actually 50% higher than what she had previously indicated to the master, the master found Wife's income to be only $646 per month, and Wife represents to this Court that there was "nothing erroneous in this finding." Wife's brief at 2. Contrary to the trial court's generic observation that the master's "conclusions and applications of discretion were reasonable and were supported by the evidence in the record," Trial Court Opinion, 3/28/19, at 3, we agree with Husband that the master abused his discretion in ignoring the updated income information.

However, we decline to address Husband's claim that alimony is not warranted at all based upon Wife's actual income. As noted above, alimony is based not only upon an examination of the parties' needs and incomes, but upon a determination that the parties' needs cannot be met through equitable distribution. *See Conner*, *supra* at 315-16. We have already held that a new equitable distribution must occur based upon errors concerning the value

of the marital portion of Wife's house and the double-counting of the marital portion of Husband's Thrivent funds. After that new distribution scheme is devised, another examination of Wife's alimony claim, in light of the subsequent equitable distribution and Wife's correct income information, shall be conducted.

In summary, the trial court adopted a recommendation that, between the improper omission of the marital portion of Wife's real estate and the erroneous double-counting of $6,700 in marital assets, reflects a substantially incorrect calculation of the value of the marital estate. Additionally, the trial court ordered alimony based upon significant miscalculations as to Wife's income. Therefore, we vacate the trial court's equitable distribution order in its entirety, including the determination that the marital estate should be divided equally, and remand for a resolution of the parties' economic claims that is consistent with this memorandum.

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judge Musmanno joins the memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/3/2020