J-A29020-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JON S. BOWMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHANNON C. BOWMAN | : | |
| | : | |
| Appellant | : | No. 655 MDA 2020 |

Appeal from the Decree Entered March 12, 2020,
in the Court of Common Pleas of Cumberland County,
Civil Division at No(s): 2016-01738.

BEFORE: DUBOW, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:        **FILED FEBRUARY 09, 2021**

Appellant Shannon C. Bowman (Wife) appeals the order's denying her exceptions to the master's report and recommendation, which divided the marital estate she shared with Appellee Jon S. Bowman (Husband). Although the court divided the estate in Wife's favor, her possession of the property necessitated that she transfer a sum to Husband in order to effectuate the distribution. After careful review, we affirm.[1]

The history of this case involves a short marriage and long divorce, replete with a predictable degree of acrimony, which we need not restate. The pertinent factual and procedural background is as follows. The parties' wed

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] We note that Wife filed another appeal, 798 MDA 2020, which is separately listed before this panel.

on October 12, 2013, separated approximately 28 months later on February 8, 2016, and litigated their divorce until the entry of the decree on March 12, 2020. The couple had one child during the marriage.

Husband filed a divorce complaint in March 2016. The court held settlement conferences throughout 2017 and 2018. Part of the delay can be attributed to the shifting nature of the litigation; once the parties were separated for statutorily required timeframe, Husband was entitled to a divorce under 23 Pa.C.S.A. § 3301(d) (irretrievable breakdown) without proving fault and without Wife's consent. After no settlement was reached, the court set an equitable distribution hearing before a master. The master held hearings on November 1, 2018, and January 22-23, 2019, which culminated with the master's report and recommendation on April 25, 2019.

In the report, the master determined that Wife earned $116,703 per year and received $1,066.48 for the support of the parties' child. Husband earned $74,883 per year and anticipates an annual bonus of approximately $11,000. The parties were married for approximately 2 ½ years before they separated. Husband was 39 years old, and Wife was 41. The court's equitable distribution scheme provided that Wife receive 60% of the marital estate to Husband's 40%, but that Husband be responsible for 60% of the negligible marital debt to Wife's 40%.

Specifically, the master accounted for certain marital assets and debts, which are the crux of this appeal: Wife's Thrift Savings Plan (TSP) retirement account; Wife's Federal Employees Retirement System (FERS) pension; and

the increase in the value of Wife's premarital residence, where they lived during the marriage. However, the master was not persuaded by Wife's demand that she be compensated for allegedly helping Husband repay his premarital debt. Nor was the master persuaded to compensate Wife for her decision to utilize paid time off, accrued prior to the marriage, to maximize her maternity leave. *See* Master's Report and Recommendation, 4/25/19, at 1-26.

Following the master's report and recommendation, Wife filed 19 exceptions to the trial court. The court ultimately denied her exceptions and adopted the master's recommendation by order of December 11, 2019. The December order was made final by the entry of the divorce decree on March 12, 2020. Wife filed a timely[2] notice of appeal.

---

[2] Wife filed a notice of appeal on April 24, 2020, which was 13 days beyond the allowable 30-day timeframe provided by Pa.R.A.P. 903(a). This Court issued a rule to show cause, directing Wife to explain why the instant appeal should not be quashed as untimely. In response, Wife cited our Supreme Court's declaration of a general, statewide judicial emergency on account of COVID-19. *See In re: General Statewide Judicial Emergency*, 228 A.3d 1281 (Pa. 3/16/20) (*per curiam*). She correctly noted the Supreme Court's suspension of "all time calculations for purposes of time computation relevant to court cases or other judicial business, as well as time deadlines." *See id.* Indeed, the High Court specified thereafter: "Legal papers or pleadings…which are required to be filed between March 19, 2020 and May 8, 2020, generally shall be deemed to have been filed timely if they are filed by the close of business on May 11, 2020. *In re: General Statewide Judicial Emergency*, 230 A.3d 1015 (Pa. 4/28/20) (*per curiam*). Because the Supreme Court's orders extended Wife's filing date to May 11, 2020, her notice of appeal, dated April 24, 2020, is timely.

She presents the following issues for our review:

1. Did the lower court err by violating (without any analysis) federal law and ordering an immediate offset payment of Wife's [Federal Employees Retirement System (FERS)] benefit?

2. Did the lower court err by overinflating the immediate offset value of Wife's FERS benefit?

3. Did the lower court err by valuing Wife's non-marital asset (her [thrift savings plan (TSP)] retirement plan) as a martial asset both in calculating growth beyond the date of separation as well as failing to credit for premarital funds used to repay a premarital loan?

4. Did the lower court err by not accounting for or considering that Husband paid off his pre-marital debt with marital money?

5. Did the lower court err by not crediting Wife for having expended her significant amount of accrued sick leave to pay for household expenses?

6. Did the lower court err in accepting the master's valuation of the marital home on the date of marriage?

7. Did the lower court's equitable distribution order fail to effectuate economic justice because the court refused to account for Wife's substantial contributions toward the marriage?

Wife's Brief at 2-3.

At the outset, we underscore that the objective of equitable distribution is to effectuate economic justice between the parties and to achieve a just determination of their property rights. *See Hess v. Hess*, 868 A.2d 554, 558 (Pa. Super. 2005). Our scope and standard of review of equitable distribution awards is settled:

We review a challenge to the trial court's equitable distribution scheme for an abuse of discretion. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. We will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. [...] When determining the propriety of an equitable distribution award, this Court must consider the distribution scheme as a whole. We do not evaluate the propriety of the distribution order upon our agreement with the court's actions nor do we find a basis for reversal in the court's application of a single factor. Rather, we look at the distribution as a whole in light of the court's overall application of the 23 Pa.C.S.A. § 3502(a) factors for consideration in awarding equitable distribution. If we fail to find an abuse of discretion, the order must stand. Finally, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence.

***Conner v. Conner***, 217 A.3d 301, 309 (Pa. Super. 2019) (citations and quotation marks omitted).

## FERS Pension

Wife's first and second appellate issues concern her FERS pension. First, Wife contends that the court lacked authority to divide her FERS pension; second, in the alternative, she argues the master overvalued the FERS pension, causing the court to err when it adopted the master's recommendation.

Wife is employed by the federal government and is entitled to a FERS pension. Her contributions began before the marriage, and thus, only some portion of this pension is marital property, and an even smaller portion could

be claimed by Husband. The master recommended dividing the FERS pension via the "immediate offset" method; *i.e.*, where the court determines the present value at the time of equitable distribution and factors it into its ultimate equitable distribution scheme. The immediate offset method differs from the deferred distribution method, which requires the court to retain jurisdiction, perhaps for decades, while the parties wait to see what the ultimate value of the pension becomes.

We have explained these methodologies as follows:

> Pennsylvania law provides two methods for distributing a pension when dividing marital assets. The first method, "immediate offset," awards a percentage of the marital portion of the value of the pension to the party earning it, and offsets the marital value of this pension with other marital assets at equitable distribution. This method is preferred where the estate has sufficient assets to offset the pension, because it does not require the court to retain jurisdiction indefinitely. The second method, "deferred distribution," generally requires the court to retain jurisdiction until the pension is collected, at which point the pension is divided according to the court's order. This method is more practical where the parties lack sufficient assets to offset the marital value of the pension.

> We have recognized that neither distribution scheme will be appropriate to all cases. ***Rather, the trial court must balance the advantages and disadvantages of each method according to the facts of the case before it*** in order to determine which method would best effectuate economic justice between the parties.

***Conner***, 217 A.3d at 312 (emphasis added, citations omitted).

Given the brevity of the marriage, the master determined that the marital portion of Wife's FERS pension was relatively small. Furthermore, the

master based its determination on the assumption that Wife would retire at age 62, as opposed to age 48 ½ (the earliest she would be entitled to collect the pension). By assuming Wife would retire at 62, the master effectively reduced the marital portion of the overall pension. According to Husband's expert evaluator, if Wife retired early, the marital portion of the FERS benefit would be $87,366; however, by assuming Wife would retire at 62, the marital portion would be $26,961. The master then recommended the immediate offset of this lesser figure, in accordance with its 60/40 percentage in Wife's favor. All told, the master determined that Husband was entitled to approximately $10,784.40 of Wife's FERS pension. The trial court adopted the master's findings.

The court explained that an immediate offset was the preferred method here, because the marital estate had sufficient assets to offset the pension, and it did not require the court to retain jurisdiction. Trial Court Opinion (T.C.O.), 12/11/19, at 7. The court also reasoned that an immediate offset avoided undue speculation on Wife's future employment decisions and allowed the parties to move forward. "This Gordian knot must be cut now." *Id.*

But Wife argues that the court violated federal law, because her FERS pension may not be paid out by the Office of Personnel Management (OPM) before Wife is entitled to collect the pension. *See* Wife's Brief at 8-9. She cites federal regulations, which provide: "employees, retirees, and State court may not assign…FERS benefits except as provided in this part." *See* 5 C.F.R. § 838.111. More specifically, the regulations provide: "Under…FERS,

employee annuities…are payable on the first business day of the month following the months in which the benefit accrues[;] [i]n honoring and complying with a court order, OPM will not disrupt the payment schedule…despite any provision in the court order directing a different schedule of accrual or payment of amounts due the former spouse….” 5 C.F.R. § 838.132 (a)-(b).

We understand these federal regulations, but we do not agree with Wife's contention.  Contrary to Wife's characterization of the facts, the court did **not** order OPM to immediately payout Husband's portion of Wife's FERS pension.  Money is fungible, and the master's recommendation merely obligated Wife to transfer to Husband the cash equivalent of his share of the FERS pension.  Fashioning an equitable distribution award in this manner is entirely consistent with the immediate offset method.  Thus, it was entirely appropriate of the trial court to adopt the master's recommendation.  Wife's first claim is without merit.

Wife's second appellate issue also concerns the FERS pension.  Notwithstanding the argument above, Wife claims the master should have valued the FERS pension based on the testimony of her expert witness, as opposed to the testimony of Husband's. **See** Wife's Brief at 9.

The valuations offered by the competing witnesses diverged quite drastically.  Wife's expert valued the FERS pension at $9,113.18; Husband's expert valued the pension to be at either $87,366 or $26,961, depending on when Wife retired.  Each expert used different methodologies. Wife's expert

utilized a 5% discount rate, based on his experience with federal pensions. Husband's expert based his discount rate on what it would actually cost to purchase a guaranteed-lifetime-income plan in the private marketplace; he also relied on publications from federal organizations, taken together with mortality tables. The mortality rate was another difference in methodology. Wife's expert relied on IRS table 2000 CM, but he conceded these tables are not precise, as they are not updated often. Husband's expert, who is an actuary, used the same literature he employed to determine the discount rate. The experts also used different coverture fractions, valuation dates, and cost of living adjustments. Ultimately, the master agreed with Husband's expert, finding him to be more credible. The court adopted the master's findings.

In her Brief, Wife essentially reiterates the above differences in methodology, but she does not explain how the court's decision to adopt the master's findings constituted an abuse of discretion. She merely requests that this Court reweigh the evidence and adopt her expert's valuation instead of Husband's. As we noted above, issues of weight and credibility are within the province of the factfinder, so long as the determinations are supported by the record. **See Conner**, 217 A.3d at 309. This claim also fails.

### TSP Account

We turn now to Wife's third appellate issue, which involves Wife's TSP retirement account. Like the FERS pension, Wife's TSP account predated the marriage and thus had a marital and non-marital component. The most obvious example of the marital component is the contributions Wife made to

the retirement account during the marriage. However, there is another aspect of the marital component that the court must consider. Pursuant to 23 Pa.C.S.A. § 3501(a.1), the ***increase of value*** of any nonmarital property shall also be considered a marital asset subject to equitable distribution. There was still another quirk affecting to the valuation of the TSP account. Prior to the marriage, Wife borrowed from the TSP account, incurring a premarital debt. This debt was eventually repaid during the marriage, partially with comingled funds.

Regarding the TSP valuation, the court again relied on Husband's expert over Wife's expert. Husband's witness valued the increase of value of the nonmarital component to be $11,004. He further valued the marital contributions to the TSP account, including a portion of the TSP debt repayment, to be $52,955, for a sum total of $63,959 – representing the marital portion of the TSP benefit. The court adopted the master's recommendation that this asset be divided 60/40 in favor of Wife.

On appeal, Wife argues that the master's valuation was erroneous for two reasons. We begin with the first. While Wife acknowledges that the ***increase*** in value of the nonmarital property constitutes a marital asset, she maintains that contributions to the TSP account during the marriage should not have been considered. Consequently, her expert's valuation of the TSP account did not account for the marital contributions and their ongoing growth. For support, Wife cites 23 Pa.C.S.A. § 3501(a.1), which codifies the methodology for measuring the increase of value of a nonmarital property:

> The increase in value of any nonmarital property acquired …shall be measured from the date of marriage or later acquisition date to either the date of final separation or the date as close to the hearing on equitable distribution as possible, whichever date results **in a lesser increase**. […]

23 Pa.C.S.A. § 3501(a.1) (emphasis added).

In other words, Wife argues the master should not have included her marital contributions to the TSP account during the marriage, because such inclusion would result in a greater – not lesser – increase. Put another way, Wife seeks to utilize Section 3501(a.1) as a maneuver to kick out marital contributions from the TSP account. For support, Wife cites **Biese v. Biese**, 979 A.2d 892 (Pa. Super. 2009), wherein this Court determined that the increase in property value of a nonmarital house should have been determined as of the date of separation (where the increased value was lesser), and not at the date of the equitable distribution trial (where the increased value was higher). Wife's reliance on **Biese** is inapposite.

Here, Wife's TSP account had a nonmarital and marital component, just like the house in **Biese**. But unlike in **Biese**, the marital component of the TSP account has **two** distinct elements: 1) the increase in value of the nonmarital component (Section 3501(a.1); and 2) the contributions made to the benefit during the marriage. Certainly Section 3501(a.1) governs the proper methodology for determining the increase of nonmarital property. However, Wife ignores the second element of the marital component of her TSP account – that is, the contributions she made **during** the marriage. Section 3501(a.1) has no bearing on this component of the TSP account.

As the master explained:

> [P]roperty earned…over the course of the marriage is marital and adding it to premarital accounts does not convert it to a non-marital asset. 23 Pa.C.S.A. § 3501(a), (b); **Nagle v. Nagle**, 799 A.2d 812, 818 (Pa. Super. 2002). Additionally, it would appear the ability to accurately trace premarital funds is required to avoid a determination that premarital assets have comingled with marital assets and are therefore transformed into marital assets for the purposes of equitable distribution. **See Dean v. Dean**, 98 A.3d 637, 641 (Pa. Super. 2014); **Busse v. Busse**, 921 A.2d 1248, 1257 (Pa. Super. 2007). Finally, it is important to note that the court is given great discretion in determining the value of a marital asset. **Carney v. Carney**, 167 A.3d 127, 131 (Pa. Super. 2017); **Mundy v. Mundy**, 151 A.3d 230, 236 (Pa. Super. 2016).

Master's Report and Recommendation, 4/25/19, at 10.

The trial court adopted this recommendation, and we find no error of law, nor abuse of discretion. Our Supreme Court explained the difficulty in labeling and distributing an employee-spouse's pension in **Smith v. Smith**, 938 A.2d 246, 253 (Pa. 2007):

> An employee-spouse's pension benefit does not fit cleanly into either the marital or the post-separation category. On one hand, the pension can be viewed as a fruit of the marriage and the product of both spouses' efforts during the marriage, thus warranting consideration as marital property subject to distribution to the non-employee-spouse. On the other hand, the eventual pension benefit may also result partially from the employee-spouse's continued employment after separation, and thus, partially, would be non-marital property not subject to distribution.

**Id.**

- 12 -

The same logic prevails here. Wife's contributions prior to the marriage, and after the date of separation, are of her own labor. But the court cannot ignore that aspect of the TSP account that is the fruit of the marriage, *i.e.* marital property.

Nonetheless, Wife advances a second reason the court overvalued the TSP account. Regarding the premarital TSP loan, which Wife repaid during the marriage, Wife argues that she repaid the TSP loan with nonmarital funds. **See** Wife's Brief at 14-17. The master observed that each party generally kept their respective funds separate, and that each spouse repaid their respective expenses and premarital debts with their own funds. However, Husband's expert testified that Wife used some marital funds, from a comingled account, to repay some of the premarital loan she borrowed from her TSP account. The master determined Wife could not refute Husband's expert, and factored the loan repayment into its valuation of the increase of the nonmarital portion of the TSP account. We observe that "it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence." **Brubaker v. Brubaker**, 201 A.3d 180, 184 (Pa. Super. 2018). The court adopted master's recommendation, and we fail to discern an abuse of discretion.

### Husband's Premarital Debt

In her fourth issue, Wife argues that the court failed to consider Wife's marital contributions toward repaying Husband's premarital debt. When the

parties married, Husband had credit card debt, student loan debt, and a car note. Only Husband's student debt remained at the time of equitable distribution.

Wife cites **Hicks v. Kubit**, 758 A.2d 202 (Pa. Super. 2000) for the proposition that "[o]ut of fairness to Wife, Wife must be compensated for her contribution that enables Husband to eliminate a premarital debt." **See** Wife's Brief at 17. However, this excerpt does not appear in **Hicks**. Rather, it is a quotation from a trial court opinion, as cited by our non-precedential decision in **Topel v. Topel**, 2018 WL 1783162, 1-6* (Pa. Super. 2018).[3]

In **Topel**, the husband's premarital home was underwater; *i.e.*, the mortgage was greater than the value of the house. The wife provided significant funds to the husband in order to get him out of debt so he could sell his premarital home. The premarital home sold, and husband was then free and clear of his debt. The wife then refinanced the mortgage of her home – the one she lived in with the husband before their separation. The trial court in **Topel** recognized that the wife was *de facto* paying for Husband's premarital home, because when she refinanced the her mortgage, she took on new debt to Husband's benefit. Thus, to effectuate economic justice at the parties'

---

[3] We note that **Topel** has no persuasive value as it was filed prior to our rule change. Per 210 Pa. Code § 65.37 (Non-Precedential Decisions (formerly titled Unpublished Memorandum Decisions), non-precedential decisions filed after May 1, 2019, may be cited for their persuasive value. **See also** Pa.R.A.P. 126(b) (Citations of Authorities). Nevertheless, we discuss **Topel** to underscore the deficiency of Wife's argument.

equitable distribution hearing, the trial court determined that wife needed to be compensated. We agreed. *Id.* at *6.

Here, the parties left to themselves their premarital responsibilities. As noted above, the master determined that Husband repaid his debts using his own funds from an account that was not comingled with the parties' marital assets. The master noted that, for the most part, the parties chose to maintain separate accounts in their individual names, with each contributing to a joint account from which they utilized for their joint expenses (such as utilities, groceries, taxes, the mortgage – and later – child expenses).

Thus, unlike in *Topel*, Wife did not contribute to the repayment of Husband's premarital debt, much less incur debt herself to unburden Husband. We note, however, that the master acknowledged Wife contributed more toward the parties' joint expenses, in large part because she earned considerably more income than Husband. Still, we find no error. To the extent that Husband was able to pay down much of his premarital debt during the course of the brief marriage, the same was reflected in the master's equitable distribution scheme whereby Wife received 60% of the assets. And although the master determined the total marital debt was relatively miniscule ($604.16), the master recommended that Wife only be responsible for only 40% of the marital debt. We discern no abuse of discretion in the court's decision to adopt the master's report.

**Wife's Sick Leave**

In her fifth appellate issue, Wife argues the court ignored Wife's contribution to the marriage when it did not consider Wife's accrued sick leave. *See* Wife's Brief at 18. Wife used her premarital sick leave, in conjunction with her allotted maternity leave, so she could enjoy 3 ½ months' worth of paid-time-off after the birth of the parties' child. In essence, Wife claims that she had to use her sick leave after the child's birth, because Husband refused to increase his financial contributions to the household. Wife totals the financial value of the sick leave to be $26,076.26, all of which she accrued prior to the marriage. Thus, according to Wife, the utilization of this premarital paid-time-off should have been considered as a contribution toward the household, for which she deserves some credit in the court's equitable distribution calculations.

Husband argues that Wife chose to utilize her paid sick leave so she could have an extended maternity leave, even though she could have saved this accrued paid-time-off and opted for a shorter maternity leave. The master's report mentioned Wife's sick leave only in passing, in a miscellaneous category that includes *inter alia* the wear and tear on the hot water heater in the marital residence. *See* Master's Report and Recommendation at 20. The master concluded: "These miscellaneous issues, while not listed exhaustively or addressed specifically, have been sifted for relevance and considered by the [m]aster in the recommended distribution." *Id.* In adopting the master's recommendation, the trial court opined: "Again, it is not a matter of failing to consider Wife's contention, it is a question of adopting it as valid.

- 16 -

Ultimately, we are unconvinced that Wife should be compensated for using her leave." T.C.O., at 9.

Although Wife cites no legal authority to support her argument, we recognize that a relevant equitable distribution factor is "the sources of income of both parties, including, but not limited to, medical, retirement, insurance *or other benefits*." *See* 23 Pa.C.S.A. § 3502(a)(6). We are hesitant to speculate, but we certainly see how Wife's benefits could have factored into the equitable distribution of the marital estate. However, "[w]e do not evaluate the propriety of the distribution order upon our agreement with the court's actions nor do we find a basis for reversal in the court's *application of a single factor*. Rather, we look at the distribution as a whole in light of the court's overall application of the 23 Pa.C.S.A. § 3502(a) factors for consideration in awarding equitable distribution." *Harvey v. Harvey*, 167 A.3d 6, 17 (Pa. Super. 2017) (citation and internal brackets omitted) (emphasis added). Put plainly, while the court could have given more weight toward Wife's contribution of paid sick leave, the court did not err for failing to do so. Wife's fifth contention is without merit.

**The House**

In her sixth appellate issue, Wife claims that the court erred by accepting the master's valuation of her home. *See* Wife's Brief at 20. When the parties married, Husband moved into Wife's premarital residence. Because the residence was nonmarital, only its increase in value was subject

to equitable distribution, per 23 Pa.C.S.A. § 3501(a.1), **supra**. Again, Wife's

contention is little more than a battle-of-the-experts. The master explained:

> Husband claims that there was an increase in value, as determined by his expert. In accordance with 23 Pa.C.S.A. 3501(a.1), Husband's expert […] appraised the property on the date of marriage, the date of separation, and at a date close to that of the hearing on the issue. Subtracting the date of marriage value from the date of separation valued yielded the lesser increase and Husband claims that increase in the value of the house was $13,000. In lieu of using her own expert to value the real estate on the date of separation and close to the hearing date, Wife wishe[d] to stipulate to Husband's date of separation valuation without agreeing that Husband's expert utilized the appropriate valuation methodology. Utilizing Wife's date of marriage valuation and Husband's date of separation valuation would yield a decreed in value of $2,000 over the course of the marriage.
>
> […]
>
> At the hearing on the real estate valuation, both Husband and Wife presented testimony and reports from experts[….] Both experts presented credible testimony and acknowledge that the valuation of real estate often requires the appraiser to apply their discretion in determining the appropriate value attached to different aspects of the property, such as the craftsmanship of the home and the materials used. Of note, it would appear that each expert came up with a different square footage measurement for the property [a difference of 310 square feet] which affected their overall value determinations. […] In his testimony, Wife's expert acknowledged that he did not find anything wrong with Husband's expert's testimony outside of the square footage discrepancy and generally subjective valuation issues. [Wife's expert] further testified that if he were to use [Husband's expert's] square footage numbers their respective valuations of the property on the date of the marriage would be closer together.
>
> As [Wife] did not provide any independent valuation of the property beyond that of the date of marriage, Wife asserts

> that Husband's expert correctly valued the property at the date of separation, but incorrectly valued the property at the date of marriage. This contention is untenable.

Master's Report and Recommendation at 15-16.

The court adopted the master's recommendation. On appeal, Wife cannot articulate how the trial court abused its discretion. As we noted above, weight and credibility determinations are within the province of the fact-finder. *See Brubaker*, *supra.* In our review, we conclude that the master's determinations were supported by the record, and thus we conclude Wife's claim is without merit.

### Economic Justice

In her seventh and final appellate issue, Wife sets forth a catchall claim that the court's adoption of the master's report failed to effectuate economic justice. As mentioned above, the master recommended Wife receive 60% of the marital estate and that she be responsible for 40% of the negligible marital debt. To achieve this distribution, the master recommended, *inter alia*: Wife transfer $18,965.80 from her TSP account to the tax-deferred account of Husband's choosing; that she transfer $10,000 in cash to Husband; and that she pay Husband $817 in 28 monthly installments.

Wife surmises that Husband effectively "leached off of Wife during the marriage," which we construe as her disapproval of Husband's contributions to the marriage and its estate. *See* Wife's Brief at 29; *see also* 23 Pa.C.S.A. § 3502(a)(6)-(7) ("The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits[; t]he contribution

or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as a homemaker."). Wife argues that a just distribution would reflect her retention of 71%-79% of the marital assets. For support, she relies on **Wang v. Feng**, 888 A.2d 882, 886 (Pa. Super. 2005), a most unusual case wherein this Court affirmed the decision to award a wife 100% of the marital estate. **See** Wife's Brief at 28-29. Those circumstances are not present in the instant matter.

We recognize that the court's equitable distribution scheme required Wife to transfer a relatively large sum to Husband, because Wife was in possession of the marital property. Of course, Wife takes no comfort in the fact that the court awarded her the lion's share of the marital property. Beyond her general dissatisfaction, Wife cannot articulate how the law was "overridden or misapplied or [how] the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." **See Carney v. Carney**, 167 A.3d 127, 131 (Pa. Super. 2017).

In sum, Wife fails to appreciate the broad discretion this Court affords to the trial court in equitable distribution matters, specifically when it comes to weighing the Section 3502(a) factors and determining the credibility of the witnesses. After reviewing the court's decision to adopt the master's report

and recommendation, we discern no abuse of discretion. "If we fail to find an abuse of discretion, the order must stand." **Harvey**, 167 A.3d at 17.[4]

Application for Relief denied. Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 02/09/2021

---

[4] Given our disposition, Husband's Application for Relief is denied as moot.