J-S14033-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BRETT A. WILSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TERRI S. WILSON | : | No. 1319 WDA 2021 |

Appeal from the Decree Entered October 5, 2021
In the Court of Common Pleas of Blair County Civil Division at No(s):
2018 GN 1824

BEFORE:  McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED: MAY 23, 2022**

Brett A. Wilson (Husband) appeals a divorce decree entered on October 5, 2021, by the Court of Common Pleas of Blair County (trial court) terminating the marriage between Husband and Terri S. Wilson (Wife), distributing their marital assets and awarding Wife alimony.  We affirm.

**I.**

Husband and Wife were married on January 4, 1991.  They had two children who are now both adults.  In early December 2016, Husband moved out of the marital residence, where Wife continued to live.  From that time until April 2018, Husband tried to reconcile with Wife.  Although Husband

_____

[*] Retired Senior Judge assigned to the Superior Court.

moved back into the marital residence in April 2018, no reconciliation occurred.

On June 28, 2018, Husband filed for divorce and Wife counterclaimed. In July 2018, Husband and Wife obtained PFA orders[1] against each other, following an incident in which Wife allegedly assaulted Husband. The parties soon thereafter agreed that Husband would take exclusive possession of the marital residence, and a court order was entered on August 9, 2018, to that effect. Wife moved out of the marital residence that same month. After a settlement agreement could not be reached, on April 10, 2019, Husband filed a Motion for Appointment of Divorce Master and a Master was appointed.

Following a four-day evidentiary hearing, the Master submitted a Report and Recommendation to the trial court. The entire marital estate was valued at $540,495.00. The Master recommended that a 50/50 division of the marital assets was appropriate and that Husband pay alimony to Wife ($932.00 per month) for five years and five months. The parties were also directed to return each other's personal property and to exchange vehicle titles as needed. In addition, Husband was directed to pay Wife $3,247.68 as fair rental value for his exclusive use of the marital residence after the filing of the divorce complaint. Husband filed exceptions to the Report and

_____

[1] "PFA order" refers to an order entered pursuant to the Protection From Abuse Act, 23 Pa.C.S. §§ 6101-6122.

J-S14033-22

Recommendation as to equitable distribution and alimony. Wife also filed exceptions, but they are not at issue in this appeal.

Following a hearing, the trial court denied all of Husband's exceptions. The trial court's order, entered on May 20, 2021, was limited to the rulings on the exceptions and did not formally terminate the marriage.[2] The divorce proceedings concluded on October 5, 2021, when the trial court entered a final decree terminating the parties' matrimonial bonds and denying Husband's exceptions to the Master's Report and Recommendation. Husband then timely appealed that decree, and in his brief, he raises six issues for our consideration:

[1]: Did the trial court err in determining the date of separation to be June 2018, thus directing that Fair Rental Value [for use of the marital residence] be awarded to [Wife] from August 2018 until [the] date of [the] order?

[2]: Did the trial court err in determining that the John Hancock Life Insurance Policy and the savings bonds were all pre-marital [property]; therefore, having no marital value?

[3]: Did the trial court err by assessing the values of vehicles to [Husband] when he testified that he does not wish to keep the vehicles, and that they should be sold?

[4]: Did the trial court err by not giving [Husband] credit for [Wife's] withdrawals from the joint bank accounts after [the] date of [their] separation?

[5]: Did the trial court err by failing to direct that [Husband's] payment to [Wife] be reduced by his reimbursement claims for

---

[2] Due to the pending nature of the divorce proceedings, Husband's initial appeal to us filed on June 18, 2021, was quashed.

- 3 -

furniture, expenses, and property taxes paid while [Wife] was in exclusive possession of the marital residence?

[6]: Did the trial court err in awarding alimony?

Appellant's Brief, at 4-5 (suggested answers omitted).

## II.

Husband's first claim is that the trial court erred in using the separation date of June 28, 2018, to calculate the beginning of a 24-month rental period in which Husband had exclusive use of the marital residence. According to Husband, the separation began earlier, prior to Wife's exclusive possession of the home from December 2016 to April 2018, cancelling out much of the rental award that had been imposed in Wife's favor. Further, Husband argues that the rent calculation should not have been based on the fair rental value of $750.00 per month.[3] As the trial court's findings in this regard were adopted from the recommendation of the Master, which are, in turn, supported by the record, the rent award to Wife must be upheld.

The propriety of the rent calculation in this case hinges on the date of the parties' separation, which the Divorce Code defines as a "[c]omplete cessation of any and all cohabitation, whether living in the same residence or

_____

[3] The monthly rental rate of $750.00 was decreased by $100.00 per month for maintenance and $208.72 per month as a credit for real estate taxes and homeowner's insurance which were paid by Husband. Husband also received a reduction of 50% of the total rent owed because the parties' son resided in the home at the relevant times. The rent total, taking into account these reductions, was $3,247.68.

- 4 -

not." 23 Pa.C.S. § 3103. "Cohabitation" in this context means "the mutual assumption of those rights and duties attendant to the relationship of husband and wife." *Thomas v. Thomas,* 483 A.2d 945, 948 (Pa. Super. 1984).

The Code provides further that "[i]n the event a complaint in divorce is filed and served, it shall be presumed the parties commenced to live separate and apart not later than the date the complaint was served." 23 Pa.C.S. § 3103; *see also McCoy v. McCoy*, 888 A.2d 906, 912 (Pa. Super. 2005). The party seeking to rebut the presumption has the burden of proving that at a time other than when the complaint was filed, one of the parties had the "'independent intent . . . to dissolve the marital union' and that the intent was 'clearly manifested and communicated to the other spouse.'" *McCoy*, 888 A.2d at 912 (quoting *Sinha v. Sinha*, 526 A.2d 765, 767 (Pa. 1987)).

"Absent an abuse of discretion, the trial court's findings of fact, if supported by credible evidence of record, are binding upon a reviewing court." *Wellner v. Wellner*, 699 A.2d 1278, 1280 (Pa. Super. 1997).[4] During divorce proceedings, it is within the discretion of the trial court to award a

_____

[4] Generally, an appellate court will review challenges to a trial court's equitable distribution scheme for an abuse of discretion. *See Conner v. Conner*, 217 A.3d 301, 309 (Pa. Super. 2019). An abuse of discretion will not be found unless it is shown that "the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." *Id*. "It is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence." *Id*. (citations omitted).

rental credit and determine the rental credit amount. *See Schneeman v. Schneeman*, 615 A.2d 1369,1377 (Pa. Super. 1992).

Here, the Master and the trial court determined that Husband would owe rent to Wife for his exclusive possession of the marital residence for 24 months beginning on the date of separation – June 28, 2018 – when Husband filed a divorce complaint. Husband argues that the separation began earlier when he moved out of the marital residence in December 2016, entitling him to a credit based on Wife's period of exclusive possession of the marital home from that point until April 2018.

At the hearing before the Master, Husband and Wife each provided evidence as to when the date of their separation commenced. It was undisputed that Husband moved out of the marital residence in 2016 after he admitted to an extramarital affair. However, Husband also testified that even after moving out and continuing the affair into 2017, he had consistently attempted to reconcile with Wife. *See* Transcript of Testimony, 11/25/2019, at p. 27. During this period of attempted reconciliation, Husband and Wife traveled on multiple occasions and often shared meals. Husband would also perform a number of domestic tasks around the marital residence while Wife was residing there. The parties regularly attended counseling together and had sexual intercourse on at least one occasion during this period.

In April 2018, Husband moved back into the marital residence in a further attempt at reconciliation. When these attempts at reconciliation failed,

Husband filed for divorce on June 28, 2018, and Wife moved out of the marital residence less than two months later.

The Master and the trial court considered this evidence and found that a separation did not occur until the date Husband filed for divorce and, as a result, Wife was not ordered to pay rent for her use of the residence between December 2016 and April 2018. *See* Trial Court Opinion, 5/21/2021, at 22-25. This finding coincided with the statutory presumption that separation occurs on the date that a divorce complaint is served. *See* 23 Pa.C.S. § 3103.

While Husband had presented evidence that a separation had taken place earlier when he had moved out in 2016, this fact did not necessarily rebut the statutory presumption as to the separation date or otherwise preclude a finding that the parties' efforts at reconciliation delayed the separation date until divorce proceedings began. Husband presented no definitive evidence that either of the parties, prior to the filing of the divorce complaint, had an "independent intent . . . to dissolve the marital union" and that this intent was "clearly manifested and communicated to the other spouse." *McCoy*, at 888 A.2d at 912. Moreover, that Husband moved back into the marital residence in April 2018 belies his claim that he and Wife had already decided in 2016 to dissolve the marital union or live separate and apart from each other.

Due to the ample evidence of reconciliation during the period of Wife's exclusive possession of the home, we find that the trial court did not abuse its

discretion in fixing June 28, 2018, as the date of separation and then calculating Husband's rent obligations from that date. **See Brubaker v. Brubaker**, 201 A.3d 180 (Pa. Super. 2018).

As for the sub-issue of the monthly rental amount, we likewise find no abuse of discretion in awarding Wife a fair rental value of $750.00 per month during Husband's period of exclusive possession of the marital residence. The fair market value of the residence was undisputed, and Wife presented evidence in the form of an appraisal establishing fair market rental value. **See** Transcript, 11/25/2019, at pp. 21-22. The trial court did not abuse its discretion in crediting that evidence. **See generally Trembach v. Trembach**, 615 A.2d 33 (Pa. Super. 1992).

## III.

Husband's second claim is that the trial court erred in determining that a life insurance policy and savings bonds were premarital property which were not subject to equitable distribution. This issue is difficult to address because the Master and the trial court apparently found that these were marital assets just as Husband contends. **See** Master's Report and Recommendation, 10/19/2020, at 13-14, 42; Trial Court Order, 5/20/2021, at 1.

The order on review directs that Husband and Wife are each entitled to 50% of the marital assets. Accordingly, each party received $270,247.69, which was exactly half of the entire marital estate. Wife's share of the marital estate included approximately $2,000.00 for the subject life insurance policy,

and approximately $920.00 for the subject savings bonds. Had this property been considered non-marital, it could not have been part of the equitable distribution. Thus, we find no merit in Husband's claim that the trial court abused its discretion in this regard.[5]

## IV.

The third claim Husband raises is that the trial court erred by awarding him three jointly owned vehicles because he does not want the inconvenience of storing or selling them. Again, we find that the trial court did not abuse its discretion. Wife presented evidence that she does not presently have the means of storing the vehicles, whereas Husband has space to keep the vehicles at the marital residence. The allocation of this property was well within the trial court's discretion. Husband is now free to do with the vehicles as he sees fit, and if he chooses to sell them, then he would be entitled to the proceeds.

## V.

The fourth claim before us is whether the trial court erred in declining to credit Husband a total of $27,454.80 which Wife withdrew from a joint banking account after Husband had moved out of the marital residence in

---

[5] Wife has argued in her brief that the savings bonds and life insurance policy should not have been considered marital property because she owned the assets prior to the marriage. However, insofar as the trial court erred in treating the assets as marital property, we would only have the authority to address the merits of such an error had a cross-appeal been filed.

December 2016. We find that the trial court acted within its discretion by declining to credit Husband with a sum equal to these disputed withdrawals.

As discussed above, Husband and Wife were separated on the date that Husband filed a divorce complaint on June 28, 2018. Wife's prior withdrawals from their joint banking account were, therefore, not deductible from Wife's share of the marital property during equitable distribution.

**VI.**

Husband's fifth claim is that the trial court erred in failing to credit him for the cost of purchasing new furniture, living expenses he incurred while Wife resided alone in the marital residence, and property taxes and homeowner's insurance premiums Husband paid in 2017.

As to the property taxes and homeowner's insurance premiums, the trial court properly referred to the date of separation in June 2018. As such, Husband would not be entitled to credit for payments needed to maintain the marital residence prior to that date.

As to Husband's claims concerning the furniture and his living expenses, no relief is due. Husband and Wife agreed after their separation in June 2018 that she would move out of the marital residence. Although Wife removed furniture and personal belongings from the marital residence after the separation, Husband also retained personal property that Wife argued she was entitled to. The Master and the trial court, in fact, directed both parties to return each other's personal property to the other in accordance with an

itemized list in the Master's Conclusions/Distributions. Accordingly, we find no abuse of discretion in the trial court's decision to deny Husband's request for credit against the items Wife took from the marital residence.

## VII.

The final claim Husband asserts is that the trial court erred in awarding alimony to Wife. The trial court had found, based on the Master's Report and Recommendation, that alimony was proper because Wife was more economically disadvantaged than Husband due to a lower earning capacity, poor health and financial hardships as a result of the separation and divorce.

The decision to award alimony during divorce proceedings is within the discretion of the trial court and may only be reversed where there is an abuse of discretion or insufficient evidence to support the award. *See Balicki v. Balicki*, 4 A.3d 654, 658 (Pa. Super. 2010). "Alimony is based upon reasoned needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay." *Teodorski v Teodorski*, 857 A.2d 194, 200 (Pa. Super. 2004) (citation omitted).

The Divorce Code outlines a non-exhaustive set of factors that must guide the trial court's determination on alimony:

(1) The relative earnings and earning capacities of the parties.

(2) The ages and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under section 6102 (relating to definitions).

(15) The Federal, State and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S. § 3701(b)(1)-(17).

Here, Husband argues that the trial court overlooked that Wife's age makes her immediately eligible to draw funds from her retirement savings; Wife is not responsible for taking care of a dependent; and Wife was largely responsible for the breakdown of the marriage due to her misconduct (*i.e.*, her physical attack against him which prompted a PFA order and Wife's romantic relationship with a third party). *See* Appellant's Brief, at 25. Moreover, Husband stresses that Wife does not need alimony because she is healthy enough to work full time and she has already been granted substantial financial assets in the equitable distribution.

The trial court's opinion summarizes the factual findings of the Master, touching on all of the above statutory factors, as well as the corresponding record evidence. *See* Trial Court Opinion, 5/20/2021, at 11-17. Of note, the evidence established that Husband has a far greater earning potential than Wife; Husband is 11 years younger than Wife, making it likely that he will be in the workforce for a longer time; Wife was diagnosed with cancer in 2020 and will be undergoing five years of radiation treatment; and not awarding alimony would prevent Wife from maintaining the standard of living she had during the marriage. *See id*. at 2-3.

Although the trial court did not thoroughly recount all the evidence of the parties' alleged misconduct during the marriage, the trial court's decision to uphold the alimony award was certainly supported by the Master's factual findings. *See id*. at 16-18. Specifically, the Master had detailed Husband's extramarital affair with a third party, as well as the undisputed fact that Husband maintained relations with that same third party during the period in 2017 when Husband and Wife were still attempting reconciliation. *See* Master's Report and Recommendation, 10/19/2020, at 26-36.

When reviewing an alimony award, an appellate court will not reweigh the evidence, as it is the exclusive province of the trial court to make factual findings. *See Carney v. Carney*, 167 A.3d 127, 131 (Pa. Super. 2017). Decisions on the issue of alimony must, therefore, be upheld as long as they are supported by the evidence of record. *Id*. In the present case, the trial court awarded alimony to Wife after it had duly considered the evidence of the parties' respective conduct and financial needs in accordance with statutory requirements. Thus, the alimony award must stand.

Decree affirmed.

Judge McCaffery joins the memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/23/2022