J-S39017-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ASHLEY C. DREXLER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARCUS D. DREXLER | : | |
| | : | |
| Appellant | : | No. 650 MDA 2023 |

Appeal from the Decree Entered April 5, 2023
In the Court of Common Pleas of Centre County Civil Division at No(s):
21-0649

BEFORE:  DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED DECEMBER 14, 2023**

In this divorce action, Marcus D. Drexler ("Husband") appeals from the final decree and challenges the equitable distribution award. He argues that the trial court erred in refusing to give him credit for mortgage payments he made post-separation and that this failure resulted in an inequitable distribution. We affirm.

Husband and Ashely C. Drexler ("Wife") were married in May 2017 and separated in the autumn 2020. In March 2021, Wife sued for Divorce. In December 2022, the trial court held an equitable distribution hearing and heard evidence on, among other things, property the parties purchased on Southview Circle and a marital home they owned on Independence Avenue. The evidence relevant to this appeal is as follows.

Wife testified that before marrying, she and Husband bought the Independence Avenue property. N.T., Dec. 16, 2022, at 22.[1] Only Husband was on the deed because he had been a marine and they received a Veteran Administration ("VA") loan. *Id.* at 23. She testified that the VA does not allow anybody that is not married to the veteran to be on the loan. *Id.* at 23. Wife made monetary contributions to the home, including a deposit and downpayment for the home and payments for a fence. *Id.* at 24-25. Wife also made improvements to the interior of the home. *Id.* at 25-26. Wife testified she paid half the mortgage on the Independence Avenue property from the purchase of the property until their separation in October 2020. She also said that after separation, she paid the full mortgage until she moved to North Carolina in October 2021. *Id.* at 27-29. She stated the house was sold in January 2022. *Id.* at 45.

Wife said that in 2018, the parties bought land at Southview Circle for $109,000, with the intention of building a home. *Id.* at 34-36. The house was still being constructed at the time of separation. *Id.* at 36. Wife testified that she made payments on the loan to buy the land, and after they obtained a construction loan, she made payments on that loan as well. *Id.* at 37. Wife further testified she paid the home association fee. *Id.* at 38. The total amount

---

[1] The transcript is not in the certified record. It is in the reproduced record, and neither party disputes its accuracy. ***Commonwealth v. Holston***, 211 A.3d 1264, 1276 (Pa.Super. 2019) (*en banc*) (providing that "where the accuracy of a document is undisputed and contained in the reproduced record, [this Court] may consider it," even though not in the certified record).

she paid toward the Southview Circle property was $22,708. *Id.* at 39. The total amount she paid toward expenses for both properties was $71,179.22. *Id.* at 42. Wife testified she never resided in the Southview Circle property, and that since completion of the construction, Husband and his parents have lived there. *Id.* at 48.

She stated that Carol Barton completed an appraisal of the property in November 2022, and found the property's value to be $653,000. *Id.* at 48-49. Wife testified that Husband and his parents paid the mortgage on the Southview Circle property following the separation. *Id.* at 60.

Wife further testified that when they purchased the Southview Circle property they intended Husband's parents to reside with them in an in-law suite. *Id.* at 50. His parents provided $100,000 as their portion of the building cost. *Id.* at 51.

Wife testified that she reached out to Husband regarding refinancing the mortgage on the Southview Circle property because it would be in his best interest to do so. *Id.* at 99. The refinance did not happen because they needed to sell the Independence Avenue property to refinance, and Husband would not agree to give any proceeds of the sale to wife. *Id.* at 99, 108.

Husband testified that only his name was on the deed to and the loan for the Independence Avenue property because they were not married at the time of the purchase and they wanted to use a VA loan and, after they were married, they did not add Wife to the documents. *Id.* at 138-39. Husband testified that prior to the separation they each paid half of the mortgage for

- 3 -

the property. *Id.* at 139. Husband testified that Wife resided in the Independence Avenue property following separation. *Id.* at 143.

Husband testified that prior to separation, both he and Wife contributed money to the Southview Circle property. *Id.* at 152. He stated that since the separation, he has made all payments on the property. *Id.* at 162-63. He further testified that his parents made a $100,000 down payment on the construction loan. *Id.* at 155, 157. He also testified regarding financial contributions he had made to the house since the separation. *Id.* at 162-66. Husband testified he and his parents intend to remain in the Southview Circle property. *Id.* at 157.

Husband stated he wanted to sell the Independence Avenue property so he could refinance the mortgage on the Southview Circle property. *Id.* at 143. He testified that Wife would not agree to sign the papers required to refinance the Southview Circle mortgage when the mortgage rates were low. *Id.* at 158-59. He stated that the rates had dropped when he wanted to refinance, but now are above the rate of his mortgage. *Id.* at 159-60.

The parties submitted proposed findings and fact and conclusions of law. In Husband's filing, he argued the Southview property should be valued at the original purchase price of $109,000. Defendant's Proposed Findings of Fact, Conclusions of Law, and Proposed Order, filed Jan. 17, 2023, at ¶¶ 23(a), 23(o).

In its order, the trial court valued the marital equity in the Southview Circle property at $120,711.35, representing the fair market value of

$653,000 minus the mortgage payoff amount as of November 2022 of $532,288.65. The court did not provide Husband credit for the post-separation payments he made toward the property.

Husband filed a timely notice of appeal.[2] He raises the following issue: "Whether the trial court erred in refusing to provide credit to Husband for the mortgage payments he made postseparation when refusing credit for said mortgage payments rendered the total distribution scheme inequitable." Husband's Br. at 7.

This Court "review[s] a challenge to the trial court's equitable distribution scheme for an abuse of discretion." **Conner v. Conner**, 217 A.3d 301, 309 (Pa.Super. 2019) (quoting **Hess v. Hess**, 212 A.3d 520, 523 (Pa.Super. 2019). "We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence[,]" and "will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." **Id.** (citation and internal quotation marks omitted). "When determining the

---

[2] The trial court ordered Husband to file a 1925(b) statement of concise statements, which Husband failed to do. In this Court, Husband filed a response to a Rule to Show Cause stating that neither he nor Wife's counsel received a copy of the Rule 1925 order, and included as an exhibit a letter from Wife's counsel stating she had not received the Rule 1925 order. Further, the order failed to comply with Rule 1925, as it failed to state the address to which to mail the statement to serve the trial judge. Under these facts, we decline to find waiver. **See Boyle v. Main Line Health, Inc.**, No. 728 EDA 2021, 2022 WL 96613, at *11 n.8 (Pa.Super. Jan. 10, 2022) (non-precedential decision).

propriety of an equitable distribution award, this Court must consider the distribution scheme as a whole." *Id.* (citation omitted). Further, "it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence." *Id.* (citation omitted).

Husband maintains that the trial court's failure to credit his post-separation payments toward the Southview Circle property made the equitable distribution award inequitable, for three reasons. We will address his first two arguments together.

First, he maintains the court's decision to value the Southview Circle property as of the date of distribution, rather than separation, resulted in a windfall to Wife. He reasons that at separation, the property contained only foundation and some walls, but by the time of distribution, it had a fully-constructed house. He argues the date of separation would have been appropriate here, and the court's decision to use the date of distribution "made it inequitable to refuse to provide Husband credit for the significant financial contribution he made to the property post-separation." Husband's Br. at 16. He distinguishes the increase in value here from the increase that occurs where a "fully constructed residence increased in value merely due to changes in the real estate market and normal mortgage payments." *Id.* at 23. He contends that here "[t]he increase in value is dramatic because of the transformation of the property from a just-started construction to a fully complete residence." *Id.* at 23.

Next, Husband maintains the court's refusal to credit the post-separation payments on the Southview Circle property made the overall distribution scheme inequitable because of the "considerable financial contributions he made from post-separation resources." Husband's Br. at 16. He reasons that Wife made contributions of $31,219.09 toward the land and construction loans, but he made contributions of $80,328.74 in just post-separation payments. He claims the trial court's decision provided Wife with more than double the amount she contributed to the loan and provided him with no credit for his sizable contribution. He argues the post-separation payments were not voluntary, but rather the minimum required to preserve the marital asset and resulted in him paying more on the property than he earned each month. He argues this did not achieve the Divorce Code's goal of economic justice.

The trial court concluded the Southview Circle property should be valued as of the date of distribution and Husband's arguments failed to credit Wife for the contributions she made to the property:

> The parties purchased [the] Southview Circle [property] in mid-September of 2018, intending to build a marital home. The purchase price for the land was approximately $109,000.00. Construction of the residence began before the parties separated but was not complete until June of 2021. Wife presented evidence that she and Husband split the closing costs associated with the purchase, and that she paid approximately half of the homeowners' association fees and the loan payments for [the] Southview Circle [property] until shortly after the parties separated. At that time, Husband started paying the Southview Circle loan and Wife paid the mortgage on [the] Independence Avenue

[property] where the parties had resided during the marriage (further discussed below). In addition to making substantial financial contributions, Wife was very instrumental in locating the Southview Circle property, making arrangements for the purchase transaction, and in designing the specifications and selecting materials for the home to be built on the property.

Wife presented an appraisal prepared by Carol Barton, a certified residential appraiser, valuing [the] Southview Circle [property] at $ 653,000.00 as of November 10, 2022. Husband did not present evidence to undermine the Barton appraisal, nor did he produce his own appraisal at the hearing. Instead, Husband urges the Court to use the purchase price for the land, $109,000.00, as the value of the property for equitable distribution purposes. To that end, Husband argues the value of the property as of late 2022 is attributable to expenditures for certain improvements by Husband and his parents, but Husband presented no proof regarding how those expenditures relate to the overall value of the property. In addition, Husband's argument fails to acknowledge the substantial contributions Wife made in terms of procuring the property, maintaining and increasing the parties' equity position through mortgage and homeowners' association payments, and designing the residence that was ultimately constructed there. Finally, the Court observes that Husband would include the entire balance of the construction loan/mortgage as a marital debt; this would be grossly unfair if the value of the residence built with proceeds from the loan was not also included in the marital estate.

Trial Court Opinion, filed Apr. 3, 2023, at 3.

We conclude the trial court did not abuse its discretion. Husband did not argue in the trial court that the property should be valued as of the date of separation. Rather, he argued the property should be valued as of the date of purchase. Further, the court did not err in finding that Husband failed to establish how his contributions added to the overall value of the property, that his argument did not credit Wife for the contributions she made, and that it

would be inequitable to include the balance of the construction mortgage loan as marital debt, but not include in the value of the property that was built with the loan.

Husband also claims the court improperly refused to award him credit for the post-separation payments. He asserts that he is paying, and will continue to pay, significantly more interest on the loan for the Southview Circle property because Wife refused to refinance the loan at a more advantageous rate. He claims Wife would not have been prejudiced had she agreed to refinance the loan because the parties allegedly agreed to preserve Wife's claim regarding the value and distribution of the marital portion of the Independence Avenue property. He argues the interest rate on the loan was 4.99%, and he wanted to refinance when the interest rate was between 2% and 3%. He states that at the time of distribution the interest rate was higher than 4.99%.

The trial court credited Wife's testimony that Husband refused to give her any proceeds from the sale of, or agree to preserve arguments regarding, the Independence Avenue property. It therefore concluded Husband should not receive a credit for the alleged increase in payments due to the failure to refinance the loan:

> Husband also complains that he was unable to refinance the construction loan when mortgage rates were extremely favorable due to Wife's ostensible failure to cooperate. Husband argues he should receive a credit of $13,500.00, representing excess interest in the amount of $750.00 per month accruing on the construction loan between July of 2021 and January of 2023 because Wife would not permit

him to refinance the loan to a lower rate when it was available. Husband notes that the presently existing unfavorable rates will result in substantial added costs over the life of the loan. Wife testified that she asked Husband to refinance the Southview Circle property when it became apparent that he wanted to both keep that home and sell the . . . Independence Avenue [property] where they had resided; Wife testified that Husband at that point refused to agree to either give her any proceeds from the sale or to preserve their arguments regarding value and proportionate shares until the time of equitable distribution. The Court found this testimony credible and observes that the parties were both relatively uncooperative with one another at various junctures during the course of this divorce litigation, and that cooperation on both sides would have undoubtedly benefitted them both. It is unfortunate that Husband missed the opportunity to take advantage of very favorable mortgage interest rates before the rates started to climb, but the Court does not believe it would be fair or equitable to place the blame for this misfortune on Wife. The Court rejects Husband's request for credit as to this item.

Trial Court Opinion, filed Apr. 3, 2023, at 4-5.

The trial court did not abuse its discretion in refusing to credit Husband for the alleged increase costs due to a failure to refinance. The court found Wife credible, and the record supports this finding. It was not an abuse of discretion to not fault Wife where Husband refused to cooperate regarding the sale of the Independence Avenue property, which was required prior to refinancing.

Order affirmed.

- 10 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/14/2023